1 purposes solely to benefit Defendants.

2     30.     Defendants have failed a refused to return the money to Plaintiffs and have used
3 the money to purchase real property for their own gain.

4     31.     Defendants are also guilty of the theft/conversion of Plaintiffs' firearms the value
5 of which is currently not known.

6     32.     As a result of the Defendants conversion of Plaintiffs money, Plaintiffs have
7 suffered damage in an amount exceeding $362,052.66.
8

9     33.     Plaintiffs were required to retain an attorney and have incurred attorney's fees and
10 litigation costs in pursuing its claims in this action and will petition the Court for repayment of its
11 fees and costs at the termination of this action.

12                 **VI.**   <u>**THIRD CAUSE OF ACTION**</u>
13                          (Injunction)
14     34.     Plaintiffs repeat and reallege the allegations in 1-33 of the Complaint as though
15 fully set forth herein.

16     35.     Pursuant to RCW 7.40.020, RCW 7.40.040, RCW 7.40.050, and Wash. Civ. R. 65
17 the Court may grant a preliminary injunction at the commencement of an action and in cases of
18 emergency without notice or a hearing to prevent great injury to the plaintiff.

19     36.     Defendants have obtained Plaintiffs' money through fraud, deception, and illegal
20 means.

21     37.     Defendants are in the process of using the illegally obtained money to purchase a
22 house, and Plaintiffs are informed and believe the closing date for the sale on the Golden Ct. house
23 is imminent. Further, Plaintiffs do not know how Defendants are disposing of the remainder of
24 the money converted. As such, there is an immediate threat that Defendants will dispose of
25
26 Plaintiffs money and make it significantly more difficult for Plaintiffs to secure the return of the
27 money.
28 **VERIFIED COMPLAINT FOR FRAUD, CONVERSION**
**AND INJUNCTIVE RELIEF- 6**

                           Hawley Troxell Ennis & Hawley LLP
                           422 W. Riverside Avenue, Suite 1100
                           Spokane, Washington 99201
                           509.624.5265

38.    Defendants' conduct constitutes an ongoing threat that the return of Plaintiffs money may not occur or that the funds will be disposed of and not retrievable.

39.    Accordingly, if the Court does not act immediately to enjoin the purchase of the Golden Ct. house, Plaintiffs will suffer irreparable harm, that harm being actual and substantial.

40.    Plaintiffs were required to retain an attorney and have incurred attorney's fees and litigation costs in pursuing its claims in this action and will petition the Court for repayment of its fees and costs at the termination of this action.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF PRAYS FOR A JUDGMENT AGAINST DEFENDANT AS FOLLOWS:

1.    For preliminary and immediate injunctive relief under RCW 7.40.020, RCW 7.40.040, and Wash. Civ. R. 65, until notice and a hearing may be had pursuant to RCW 7.40.050, to prevent, enjoin, and restrain Defendants from utilizing Plaintiffs money to purchase the house located at 1004 E. Golden Ct., Spokane, Washington.

2.    For permanent injunctive relief against Defendants to stop them from using the illegally obtained funds and order Defendants to return the funds to Plaintiffs.

3.    For judgement in favor of Plaintiff for damages in the amount of $362,032.66 pursuant to their Fraud claim.

4.    For judgement in favor of Plaintiff for damages in the amount of $362,032.66 pursuant to their Conversion claim.

5.    For punitive damages pursuant to the fraud and conversion claims in an amount to be awarded at trial.

6.    For an award of Plaintiff's attorneys' fees and costs in bringing this action.

VERIFIED COMPLAINT FOR FRAUD, CONVERSION AND INJUNCTIVE RELIEF- 7

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Avenue, Suite 1100
Spokane, Washington 99201
509.624.5265

7.    For such other and further relief as this court deems just and equitable.

DATED this 19ᵗʰ day of November, 2023.

HAWLEY TROXELL ENNIS & HAWLEY, LLP

Michael R. Merritt, WSBA No. 60094
422 W. Riverside Ave., Suite 1100
Telephone:    509.624.5265
Facsimile:    509.458.2728
E mail:    mmerritt@hawleytroxell.com
Attorneys for Plaintiffs

**VERIFIED COMPLAINT FOR FRAUD, CONVERSION AND INJUNCTIVE RELIEF- 8**

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Avenue, Suite 1100
Spokane, Washington 99201
509.624.5265

## VERIFICATION

STATE OF OREGON )

)ss.

County of Baker )

I, Linda Cole, being duly sworn, deposes and says that I am one of the Plaintiffs in this action and have authorized the filing of this complaint. I have reviewed the allegations made in the complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on information and documents known to me and I believe them to be true.

Linda J. Cole
LINDA COLE

Sworn to me this 6 day of November 2023

Gail L. Daniels
Notary Public

OFFICIAL STAMP
GAIL LOUISE DANIELS
NOTARY PUBLIC - OREGON
COMMISSION NO. 1021917
MY COMMISSION EXPIRES FEBRUARY 16, 2026

VERIFIED COMPLAINT FOR FRAUD, CONVERSION
AND INJUNCTIVE RELIEF - 9

Hawley, Troxell Ennis & Hawley LLP
422 W. Riverside Avenue, Suite 1100
Spokane, Washington 99201
509.624.5265

SUPERIOR COURT OF THE STATE OF WASHINGTON

FOR SPOKANE COUNTY

LINDA COLE and TED COLE,

      Plaintiffs,

vs.

ERIC ROSS YOUNG and SUSANANN LYNETTE YOUNG,

      Defendants.

Case No. 232 04734-32

DECLARATION OF LINDA COLE IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

I, Linda Cole, declare as follows:

1. I am one of the Plaintiffs in the above entitled action, I am over 18 years of age, and I make this declaration based on personal knowledge.

2. I am married to Ted Cole. Susanann Young is my daughter and Ted's step daughter. Eric Young is our son-in-law. I am 79 years of age and Ted is 81 years of age.

3. Ted and I had planned to move from Baker City, Oregon, where we currently live, to Spokane, Washington to live with or near Eric and Susann Young. The plan was to be able to have the assistance of Eric and Susanann as Ted and I get older. Eric and Susanann selected a home they wanted purchase and asked Ted and I to fund the down payment for a house, which is

DECLARATION OF LINDA COLE
IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE
- 1

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Avenue, Suite 1100
Spokane, Washington 99201
509.624.5265

located at 1004 E. Golden Ct. in Spokane, WA. Eric and Susanann did not have money for a down payment for the house purchase, so Ted and I agreed to contribute the requested $180,000 as the down payment for the house in exchange for Linda and Ted Coles being reflected on the title of the as co-owners. Ted and I would also move into the home with Eric and Susanann and live on the first floor of the home. Also, as part of the agreement, Ted and I would be on the mortgage as borrowers as well. Once moved in, Eric and Susanann would make the house payments.

3. Ted and I intended to draw the $180,000 from a fund of money that is Ted's inheritance from his father. The money was kept in a bank account at Old West Federal Credit Union located in Baker City, Oregon. While in Spokane, Eric informed us that we needed to wire the down payment funds right away or we would lose the Golden Ct. house. Ted and I made a telephone call to Old West Federal Credit Union to arrange the wire transfer and were told we had to be physically in the branch to make the transfer. During the phone call, Eric, in the background, was insistent that the transfer needed to occur immediately. During this conversation, I told the credit union official that after the $180,000 was wired, I wanted to transfer the remaining $62,314.62 in the account to a Chase Bank account she held. I also asked that the sum of $119,698.04, held in a second Old West Federal Credit Union account, be transferred to my Chase account. In the middle of this conversation, Eric took over the conversation with a credit union official and I wrote down my Chase Bank account number for Eric to use in arranging the wire transfers.

4. After the phone call, Eric was in a rush to get the transfer done, and urged me to go to a postal annex where a notary could notarize the transfer form to transfer the down payment money immediately. At the postal annex, Eric presented only two separate sheets of paper with my signature line on each. The first page of the wire transfer form, with the amount of the transfer

DECLARATION OF LINDA COLE
IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE
- 2

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Avenue, Suite 1100
Spokane, Washington 99201
509.624.5265

and the identification of accounts, was not included for either me or the notary to review. I assumed the wire transfer form would reflect the proper receiving bank account and the correct transfer amount of $180,000. I signed the two pages Eric offered at the postal annex in front of the notary and only later found that I had authorized two transfers, one in the amount of $242,334.62, and the other in the amount of $119,718.04. I also did not know that the receiving bank account number for both transfers had been changed from my Chase account to an account held by Eric at Bank of America.

5. After Ted and I became aware of the transfers of the funds our account, we contacted the realtor handling the house purchase to at least make sure the realtor had instructions to place our names on the house title as co-owners of the house. We were informed by an attorney at the realty office that they did not have instructions from Eric and Susanann to add our names to the title of the house and after what we believe was a conference between the attorney at the Realty office and Eric and Susanann, the attorney at the realty office spoke to us again and refused to place our name on the title of the house.

6. We believe the sale of the Golden Ct. home may be closing as soon as November 10, 2023. We believe, from statements made by Eric, that some of the illegally obtained funds have been placed in escrow as a down payment for the home, and some of the funds are still being held in Eric and Susanann's bank account.

7. If the sale of the house is not stopped, we feel it may be very difficult to obtain the return of our money. Before Eric and Susanann convert our money into real estate or spend the money,

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Avenue, Suite 1100
Spokane, Washington 99201
509.624.5265

we ask that the process of the sale be stopped so we can show the Court that the money is ours, and that any of the money held in Eric and Susanann's bank account be frozen and held in the account without any ability to withdraw and spend it until this dispute can be resolved.

8. We received full copies of the wire transfer forms that Eric and Susanann claim I signed as attachments in a letter Susanann wrote to our church elders. The letter was written by Susanann in an effort to justify Eric and Susanann's behavior in taking our money without our permission. The forms are attached to the Memorandum in Support of Motion for Temporary Restraining Order and Order to Show Case as Exhibits A and B. As far as I know, the wire transfer forms are the true and correct copies of what Eric and Susanann used to take our money.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated this __6__ day of November, 2023

_Linda J. Cole_
LINDA COLE

DECLARATION OF LINDA COLE
IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Ave., Suite 1100
Spokane, Washington 99201
509 624-5265

1

**CERTIFICATE OF SERVICE**

2   I HEREBY CERTIFY that on this 9ᵗʰ day of November, 2023, I caused to be served a true

3   copy of the foregoing DECLARATION OF LINDA COLE IN SUPPORT OF MOTION FOR

4   TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE by the method

5   indicated below, and addressed to each of the following:

6   Eric Young & Susanann Young          ☐ U.S. Mail, Postage Prepaid
7   8507 N. Sylvia St.                            ☐ Hand Delivered
    Spokane, WA 99208                       ☐ Overnight Mail
8                                                          ☐ E-mail
    Email: jaegersdad@gmail.com        ☐ Facsimile
9   Email: jaegersmom@gmail.com

10  (936) 494-8730
    (936) 494-8319

11

12

13                                    Jessie Smylie, Legal Administrative Assistant

14

15

16

17

18

19

20

21

22

23

24

25

26
    **DECLARATION OF LINDA COLE**          Hawley Troxell Ennis & Hawley LLP
27  **IN SUPPORT OF MOTION FOR**            422 W. Riverside Avenue, Suite 1100
    **TEMPORARY RESTRAINING ORDER**      Spokane, Washington 99201
28  **AND ORDER TO SHOW CAUSE**           509.624.5265
    **- 5**

25-80037-FPC    Doc 17-1    Filed 10/24/25    Entered 10/24/25 16:47:26    Pg 9 of 150

COPY
Original Filed
NOV 1 3 2023
TIMOTHY W. FITZGERALD
SPOKANE COUNTY CLERK

1
2
3
4
5
6

SUPERIOR COURT OF THE STATE OF WASHINGTON

7

FOR SPOKANE COUNTY

8 LINDA COLE and TED COLE,

Case No. 23-2-04734-32

9

Plaintiffs,

10

vs.

11 ERIC ROSS YOUNG and SUSANANN
12 LYNETTE YOUNG,

13

Defendants.

**SUPPLEMENTAL DECLARATION OF
LINDA COLE IN SUPPORT OF
PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER**

14

15      I, Linda Cole, declare as follows:

16      1. I am one of the Plaintiffs in the above entitled action, I am over 18 years of age, and I make

17 this declaration based on personal knowledge. To provide more context for the Motion for

18 Temporary Restraining Order and to communicate in an expanded fashion what occurred between

19 Ted and I and Eric and Susan leading up to this Motion, I offer these facts in addition to this from

20 my original declaration of November 6, 2023.

21

22      2. I was brought to the notary at the postal annex to sign what I thought was one wire transfer

23 for $180,000 on October 14, 2023. On the same day I signed the wire transfer, October 14, 2023,

24 I was presented with a paper to sign by Eric. He told me it was something the mortgage lender

25 needed for the loan application. The paper was blank, and Eric asked me to sign it and he would

26

27 SUPPLEMENTAL DECLARATION
OF LINDA COLE IN SUPPORT OF
PLAINTIFFS' MOTION FOR
28 TEMPORARY RESTRAINING ORDER
- 1

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Avenue, Suite 1100
Spokane, Washington 99201
509.624.5265

"fill in" the rest for the lender. I signed the paper, and this is what I believe became the Quicken Loans "gift letter" that I saw for the first time after Eric and Susan gave to the Court and my attorney at the first hearing in this case on November 7, 2023. It should be note that the letter is dated on October 11, 2023, <u>before</u> the wire transfers were signed, but I clearly recall signing the blank paper on the same day as the transfers. Finally, the signature for Linda Cole on the letter is not my signature. **The Quicken Loans letter attached as Exhibit A to this Declaration.**

3. More than once, I asked Eric for copies of any document I signed and he has failed and refused to give any of the documents to me.

4. On or about October 16, 2023, Susan told me that a "mistake" had been made and the money Ted and I were providing for the down payment for the house was transferred into Eric's account and not my Chase Bank account. On the same date, I confronted Eric and Susan about it, and during this conversation, Eric admitted that the money was deposited in his account "by accident." Eric also maintained that he intended to keep all of the money transferred to his account and "manage it for [us]", implying he was doing us a favor and Ted and I needed his help managing our money. I asked multiple times that the money be placed back in our account immediately and Eric said each time that it really did not matter at that point because he was "handling everything." I then asked that Ted and I be placed on the loan and the real estate purchase agreement as agreed and Eric refused saying that it was impossible to do that because he was already the contracting party for the loan and the house purchase and Ted and I could not be added. These were all false statements. I called the realty office on October 17, 2023, and spoke to two realtors that worked there; the realtors agreed I could be placed on the loan and the house purchase agreement, but they needed to check with Eric first. They called Eric and then called me back and told me Eric would

SUPPLEMENTAL DECLARATION
OF LINDA COLE IN SUPPORT OF
PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER
- 2

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Avenue, Suite 1100
Spokane, Washington 99201
509.624.5265

not agree to add us to the loan, the house purchase contract, or the title of the home.

5. Once we realized what had occurred and that our money had been essentially taken without our permission and Eric and Susan had no intention of returning it or providing us an ownership stake in the house they were purchasing with our money, we left Spokane to return home to Baker City. Because of our position on the money that was taken, Eric and Susan did not allow us to say goodbye to our grandson before we left.

6. Additionally, just prior to discussions about the house purchase, Eric and Susan came to our home in Baker City, and while there, gave me a dog that was the same breed as my dog that had passed away. Eric and Susan knew I had always missed my dog, and I had just had a sister and close friend pass away in the same 24 hour period; they told that this was why they had bought the dog for me. Right after that, they began talk of the joint purchase of a house in Spokane. In Spokane, after we informed them that we wanted our money returned and wanted to withdraw from the joint purchase of the house, they refused to allow me to take the dog home with me or even to see the dog when it was time to leave. To date, they still have my dog.

7. I would add that there is a pattern of conduct by Eric and Susan in this instance that shows their dishonest intent. We discovered more theft when we returned home from Spokane. In preparation for our move expected move to Spokane, Eric offered to go to our house in Baker City and help pack up our furniture and belongings while Ted and I were in Spokane visiting. Eric was at our house in Baker City for an entire week alone. When we returned home, our house was in complete disarray and it was apparent that Eric had gone through all of our belongs, including our private papers, while were gone. Eric had taken some of Ted's tools, all of our firearms, the ammunition for the firearms, and personal papers such as insurance police documents and other

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Avenue, Suite 1100
Spokane, Washington 99201
509.624.5265

items of value.  We also had new furniture, still in the box from the store, that we bought and was delivered to us for a home remodel that was still in progress on our Baker City home; all of the new furniture was also taken by Eric.  We still do not know everything that was taken Eric while we were gone.

8.  We engaged an attorney an attorney in Baker City, Oregon, Floyd Vaughn, and he sent a letter on October 30, 2023, to Eric and Susan and their realtor demanding that the real estate transaction be terminated and informing them that the funds that were wired were obtained by Eric and Susan by false pretenses and that the funds must be returned.  **A true and correct copy of the letter is attached as Exhibit B to this Declaration**.  This letter was ignored by Eric and Susan and their realtor.

9.  Regarding all the items taken without our permission by Eric, we made a report to the Baker City Police.  **A true and correct copy of the event number report for our police report is attached to the Declaration as Exhibit C.**

10.  We made a trip to Spokane thereafter and retrieved our new furniture from a storage unit we had our own access to and brought our vehicles home as well.  However, everything else that was taken by Eric still remains with him and Susan.

11.  I sent a text message on October 30, 2023 to Susan to follow up our attorneys letter. In the message, I informed Susan that after everything that had happened, I did not want to buy a house with them and/or move in with them in Spokane.  I also asked for our money to be returned.  I received no direct response to the request in the message.  **Please see a true and correct copy of the text message to Susan attached hereto as Exhibit D**.

12.  Eric is and has been employed in a career related to IT and computers.  He has expertise

SUPPLEMENTAL DECLARATION
OF LINDA COLE IN SUPPORT OF
PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER
- 4

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Avenue, Suite 1100
Spokane, Washington 99201
509.624.5265

Appendix A 018
25-80037-FPC    Doc 17-1    Filed 10/24/25    Entered 10/24/25 16:47:26    Pg 13 of 150

with computers and other electronic devices. Eric and Susan has had possession of my laptop computer for periods of time over the last month without my supervision. I have for some time believed Eric and Susan had unauthorized access to my email account, my cloud storage and unauthorized access to my mobile phone. I know this to be true because one of the documents produced by Eric and Susan at the recent TRO hearing purports to be an email from Dawn Bruce, Branch Manager at Old West Federal Credit Union, and is addressed only to me and other employees at the credit union. One email is dated 10.13.23, which is just after Eric got off the phone with the Old West Branch Manager. See reference to this conversation in Paragraph 3 of Declaration of Linda Cole in Support of Motion for Restraining Order and Order to Show Cause. The second email is dated on 10.16.23 after I signed the wire transfers. Eric and Susan are not addressed as recipients on the email, and I did not send them the email. It is clear that Eric and Susan accessed my email account without my permission or knowledge and printed the email.

13. Additionally, Susan wrote a letter defaming me to the elders of my church in an effort to undermine my credibility in the event Ted and I informed anyone at the church that Eric and Susan had stolen money and personal property from us. Susan attached to the letter, photos she had taken of emails to and from me that could only be accessed from my email account, and screen shots of text conversations from my mobile phone. When these photographs were taken, I have no idea; however, I know that I never gave her permission or access to my computer and mobile phone.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated this 9 day of November, 2023.

_Linda J. Cole_
LINDA COLE
Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Avenue, Suite 1100
Spokane, Washington 99201
509.624.5265

SUPPLEMENTAL DECLARATION
OF LINDA COLE IN SUPPORT OF
PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of November, 2023, I caused to be served a true copy of the foregoing SUPPLEMENTAL DECLARATION OF LINDA COLE IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER by the method indicated below, and addressed to each of the following:

Eric Young & Susanann Young
8507 N. Sylvia St.
Spokane, WA 99208

Email: jaegersdad@gmail.com
Email: jaegersmum@gmail.com

(936) 494-8730
(936) 494-8319

☐ U.S. Mail, Postage Prepaid
☐ Hand Delivered
☐ Overnight Mail
☑ E-mail
☐ Facsimile

Jessie Smylie, Legal Administrative Assistant

SUPPLEMENTAL DECLARATION
OF LINDA COLE IN SUPPORT OF
PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER
- 6

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Avenue, Suite 1100
Spokane, Washington 99201
509.624.5265

# EXHIBIT A



**Quicken Loans**
Engineered to Amaze

## Gift Letter

**Donor Information**
Name: _Ted and Linda Cole_
Address: _625 Broadway St, Baker City, OR 97814_
Phone Number: _661-800-1895_
Relationship to Recipient: _Mother-in-law_

**Recipient Information**
Name: _Eric Young_
New Property Address: _1004 E Golden CT, Spokane, WA 99208_

**Gift Information**
Dollar Amount of the Donated Gift $ _242,314.62_
Date Gift Was or Will Be Given (Month, Date and Year): _10/12/2023_

Recipient, will you use (or have you used) a portion of this gift for your earnest money deposit **Yes** No

By signing this gift letter, both the donor and the recipient confirm that they didn't receive the gift funds from any person, business or entity that has any interest in the property being sold or any person connected to the transaction such as the seller, real estate agent, builder, mortgage banker or any entity associated with them. The recipient and the donor also agree that the gift does not have to be repaid.

Recipient Signature: _Eric R. Young_          Date: _10/11/2023_

Donor Signature: _Linda J. Cole_          Date: _10/11/2023_

Appendix A 022

# EXHIBIT B

# SILVEN, SCHMEITS & VAUGHAN

1950 THIRD STREET
P.O. BOX 965
BAKER CITY, OREGON 97814
TELEPHONE (541) 523-4444
FAX (541) 523-9368

FLOYD C. VAUGHAN

ALAN J. SCHMEITS
(Retired)

DAVID C. SILVEN
(1914-1997)

NICHOLS & HALLOCK
1919-1923
NICHOLS, HALLOCK & DONALD
1923-1929
HALLOCK, DONALD & BANTA
1933-1945
HALLOCK, DONALD, BANTA & SILVEN
1945- 1950
HALLOCK, BANTA, SILVEN & HORTON
1951-1954
BANTA, SILVEN & HORTON
1955-1959
BANTA, SILVEN, HORTON & YOUNG
1960-1962
BANTA, SILVEN & YOUNG
1963-1978
SILVEN, YOUNG & SCHMEITS
1979 -1980
SILVEN & SCHMEITS
1980 1991

October 30, 2023

Eric R. and Susanann L. Young
8507 N. Sylvia Street
Spokane, Washington 99208
via e-mail only: jaegersdad@gmail.com
jaegersmom@gmail.com

Rebecca Flaherty, Real Estate Broker
1338 N. Liberty Lake Road
Liberty Lake, Washington 99019
via e-mail only: rebeccaflaherty@johnlscott.com

My Clients: Ted and Linda Cole
Subject Transaction: Purchase of 1004 E. Golden Court, Spokane, Washington 99208 (the "Transaction")

## NOTICE TO TERMINATE REAL ESTATE TRANSACTION

TO ALL PARTIES RECEIVING THIS NOTICE:

NOTICE IS HEREBY GIVEN that Mr. and Mrs. Cole are immediately withdrawing from the Transaction, and demand is hereby made for immediate return of all funds wrongfully withdrawn by Mr. and Mrs. Young from the Coles' bank accounts at Old West Federal Credit Union for the Transaction. The Coles bank records show a withdrawal of $242,314.62 on October 12, 2023 and an additional $119,698.04 on October 16, 2023. Both withdrawals were via bank wire to Eric Young. The total to be immediately returned to the Coles is $362,012.66.

Mr. and Mrs. Cole indicate they had initially agreed to provide the sum of $180,000.00 as a down payment for the transaction. But only on the express condition that they would be co-owners of the property and co-borrowers on any additional funding. They have since discovered that the funds withdrawn by Mr. Young, in excess of the $180,000.00, were made without their authorization, and that Mr. and Mrs. Young and Rebecca Flaherty, among others, have advised the Coles that they cannot become co-owners or co-borrowers. The Coles would not commit funds to purchase property in which they would not be owners absent third party fraud.

The funds withdrawn from the Coles' accounts by Mr. Young were withdrawn under false pretenses. Because the withdrawals took place from an Oregon bank, and because the Coles are Oregon residents, the courts of Oregon have jurisdiction and Oregon law applies, including ORS Chapter 124, which provides multiple remedies for the victims of elder abuse. The actions of Mr. and Mrs. Young and any person assisting them in the misuse of the Coles' funds to close the Transaction will be liable to the Coles under a civil action for abuse. The Coles qualify as "elderly persons", defines a person 65 years of age or older.

The civil remedies available to my clients include seeking an immediate restraining order to prevent further abuse, and filing a civil action under ORS 124.100(2) in which they can seek award of an amount

equal to three times all economic damages, three times all non-economic damages, as well as reasonable attorney fees incurred in the proceeding. Use of the Coles' funds to consummate the Transaction clearly constitutes "financial exploitation" of an elderly person under Oregon law.

DEMAND IS FURTHER MADE to Mr. and Mrs. Young and to Ms. Flaherty to immediately provide a copy of this letter to all other parties involved in the Transaction, including without limit, the Sellers of the subject property, any title or escrow company engaged for the Transaction and any lender involved. Failure to provide me, as agent for the Coles, confirmation from the title or escrow company engaged for the Transaction, that the Transaction has been terminated by 2:00 p.m., Wednesday, November 1, 2023 will result in commencement of a civil action on behalf of Coles seeking all available remedies to terminate the Transaction and seek damages.

Upon receipt of confirmation that the Transaction is terminated, all funds removed from the Coles' bank accounts by Mr. and Mrs. Young must be returned via bank wire or other form of immediately available funds no later than the close of business Tuesday, November 3, 2023 or again, the Coles will commence legal action to pursue all available remedies. Your immediate attention and action is expected.

Very truly yours,

Floyd C. Vaughan
FCV/vss

# EXHIBIT C

# Baker City
# Police Department
1768 Auburn Avenue
Baker City, OR 97814



## Informational Brochure
Please keep this pamphlet; it contains valuable information and the case number that has been assigned to your report. Your report number is listed below and the name of the officer who took your report. If you contact the police department, please reference your report number. You will not be contacted by an investigator unless an arrest is made, property is recovered or additional information is required. If you have any additional information or have any questions, please feel free to contact the Baker City Police Department at the numbers listed below.

### Baker City Police Department:
Emergency....................... 911
Non Emergency.............. 541-523-3644
Business.......................... 541-524-2014
Fax................................... 541-524-2023

Baker City Police Reports are available from the Records Custodian at the Baker County Sheriff's Office located at: 3410 K St., Baker City or by calling (541) 523-6415, option 4. There is a fee for requested copies of police reports and/or log notes.

Property and evidence may be retrieved from the Evidence Technician, by appointment. Call 541-524-2014, Ext. 606.

Case #: _P202301214_

Officer: _Essex_

Badge Number: _611_



**Koby Essex**
Officer

Office: (541) 524-2014 ext. 611
Dispatch: (541) 523-3644 / Option 0
kessex@bakercitypd.gov

1768 Auburn Avenue
Baker City, Oregon 97814

www.bakercity.gov

**Baker City Police Department**

# EXHIBIT D

SY **Susan Young**  

## Mon, Oct 30

Good afternoon, Dad and I just wanted to make sure you know that we have changed our minds about buying the house and moving to Spokane with you. We know that you will be disappointed by our decision, and for that we are sorry. We don't fee

+ **Message**  

disappointed by
our decision, and
for that we are
sorry. We don't feel
that our families
living together is in
the best interest for
either family.   We
would like all the
money that Eric
transferred out of
our bank account.
The       $
242,324.62 on
10/12/23, and the
$119,698.04 that
you both said was

**Mon, Oct 30**

Message



**Mon, Oct 30**

ou... unt.
The        $
242,324.62 on
10/12/23, and the
$119,698.04 that
you both said was
accidentally
deposited into your
ow...

**Read More**                4:25 PM

Did you ever pick
up the Losartan for
dad?  Is he taking
it?                        8:33 PM



+    Message

COPY

Original Filed

NOV 1 3 2023

TIMOTHY W. FITZGERALD
SPOKANE COUNTY CLERK

1
2
3
4
5
6               SUPERIOR COURT OF THE STATE OF WASHINGTON
7                           FOR SPOKANE COUNTY
8    LINDA COLE and TED COLE,              Case No. 23-2-04734-32
9           Plaintiffs,
                                           **DECLARATION OF MATTHEW**
10          vs.                            **ANDERSON**
11   ERIC ROSS YOUNG and SUSANANN
12   LYNETTE YOUNG,
13          Defendants.
14
15       I, Matthew Anderson, declare as follows:
16       1.    I am over 18 years of age, and I make this declaration based on personal knowledge.
17       2.    I am a duly licensed to function as a Notary in the State of Washington and I am
18
19   employed by the Postal Annex located at 816 W. Frances Ave., Spokane, Washington.
20       3.    On October 14, 2023, Linda Cole and another man requested that I notarize Linda
21   Cole's signature on two documents.
22       4.    The two documents were one page each. The documents were the identical and
23   each was titled Wire Instructions, Indemnification and Hold Harmless Agreement and included a
24   signature line for Linda Cole to sign. ~~Because there was not enough room for my notary~~   *MA*
25   ~~acknowledgment under the signature line,~~ I added a notary acknowledgement page to each
26   document at the time of signing. True and correct copies of the documents with my executed
27
28   DECLARATION OF MATTHEW ANDERSON            Hawley Troxell Ennis & Hawley LLP
     - 1                                         422 W. Riverside Avenue, Suite 1100
                                                 Spokane, Washington 99201
                                                 509.624.5265

notary acknowledgement are attached as Exhibits A and B to this Declaration.

4.     The title of the document and the number of pages (one page each) are reflected accurately on the notary acknowledgment.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated this __10__ day of November, 2023.


MATTHEW ANDERSON

DECLARATION OF MATTHEW ANDERSON
- 2

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Avenue, Suite 1100
Spokane, Washington 99201
509.624.5265

**CERTIFICATE OF SERVICE**

1
2       I HEREBY CERTIFY that on this $\underline{10}$ day of November, 2023, I caused to be served a

3   true copy of the foregoing DECLARATION OF MATTHEW ANDERSON by the method

4   indicated below, and addressed to each of the following:

5   Eric Young & Susanann Young                    ☐ U.S. Mail, Postage Prepaid
6   8507 N. Sylvia St.                             ☐ Hand Delivered
    Spokane, WA 99208                              ☐ Overnight Mail
7                                                  ☑ E-mail
    Email: jaegersdad@gmail.com                    ☐ Facsimile
8   Email: jaegersmum@gmail.com

9   (936) 494-8730
    (936) 494-8319
10

11

12                                      Jessie Smylie, Legal Administrative Assistant

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  **DECLARATION OF MATTHEW ANDERSON**          Hawley Troxell Ennis & Hawley LLP
    - 3                                          422 W. Riverside Avenue, Suite 1100
                                                 Spokane, Washington 99201
                                                 509.624.5265

# EXHIBIT A

## Wire Instructions, Indemnification
## and Hold Harmless Agreement

I herein instruct Old West Federal Credit Union to send my funds to the recipient identified in the attached Wire Transfer/Authorization Form. By signing this agreement, I herein represent and affirm that I have completed the necessary due diligence in verifying the recipient named herein and that I will hold Old West Federal Credit Union, its Agents, and Assigns (Old West) harmless and I will indemnify Old West for any claim or dispute of any nature arising from this transaction. I also understand that if I choose to complete this wire transaction Old West Federal Credit Union is not liable for any loss of funds or claim arising from fraudulent activity. I understand that once the wire is sent and accepted there is no recourse or method for return of funds.

_Linda J. Cole_                   _October 14, 2023_

Member Signature                   Date

Notary Seal & Signature on
Official Document to Follow

## Wire Fraud Warning!

Due to the increase and prevalence of wire fraud, the following information is shared with you for informational purposes. Wire fraud takes many different forms, and can include:

Fraudulent online purchases (paying for items, shipping, or "tax" before you take delivery)

"Sweetheart" scams, wherein an online friend or romantic acquaintance (whom you have not met in person) solicits money from you for various reasons such as travel (they may be "trapped in a foreign country"), medical debt, adoption, etc.

Jail scams, wherein someone posing as a relative (ie., grandchild, nephew), or a "law enforcement official" calls (often in the middle of the night) saying your relative is in jail in a foreign country or has assaulted a foreign national and demands "bail" or "security" money.

Most of these scams require that you tell no one or the subject of the scam will "get in trouble."

These are just a few of the scams that occur. If you have doubts or questions, please don't hesitate to let us know before you send a wire.

# WASHINGTON SHORT-FORM INDIVIDUAL ACKNOWLEDGMENT [REV.43-44.100]

State of Washington

County of _Spokane_ } ss.

I certify that I know or have satisfactory evidence that _Linda Jean Cole_
                                                        Name of Signer

is the person who appeared before me, and said

person acknowledged that he/she signed this

instrument and acknowledged it to be his/her free

and voluntary act for the uses and purposes

mentioned in the instrument.

Dated: _October 14, 2023_
         Month/Day/Year

```
STATE OF WASHINGTON
Matthew Anderson
Notary Public
Commission Expires: July 19, 2024
Commission # 185853
```

_Matthew Anderson_
Signature of Notarizing Officer

_Notary Public_
Title (Such as "Notary Public")

My appointment expires

_July 19, 2024_
Month/Day/Year of Appointment Expiration

Place Notary Seal Above

--- OPTIONAL ---

*Although the information in this section is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

Right Thumbprint
of Signer

Top of thumb here

### Description of Attached Document

Title or Type of Document: _Wire Instructions, Indemnification and Hold Harmless Agreement_

Document Date: _October 14, 2023_ Number of Pages: _1_

Signer(s) Other Than Named Above: _____

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org
Item No. 5906 • Reorder: Call Toll-Free 1-800-876-6827

# EXHIBIT B

## Wire Instructions, Indemnification
## and Hold Harmless Agreement

I herein instruct Old West Federal Credit Union to send my funds to the recipient identified in the attached Wire Transfer/Authorization Form. By signing this agreement, I herein represent and affirm that I have completed the necessary due diligence in verifying the recipient named herein and that I will hold Old West Federal Credit Union, its Agents, and Assigns (Old West) harmless and I will indemnify Old West for any claim or dispute of any nature arising from this transaction. I also understand that if I choose to complete this wire transaction Old West Federal Credit Union is not liable for any loss of funds or claim arising from fraudulent activity. I understand that once the wire is sent and accepted there is no recourse or method for return of funds.

_Linda J. Cole_      _October 14, 2023_

Member Signature             Date

Notary Seal & Signature on
Official Document to Follow      **Wire Fraud Warning!**

Due to the increase and prevalence of wire fraud, the following information is shared with you for informational purposes. Wire fraud takes many different forms, and can include:

Fraudulent online purchases (paying for items, shipping, or "tax" before you take delivery)

"Sweetheart" scams, wherein an online friend or romantic acquaintance (whom you have not met in person) solicits money from you for various reasons such as travel (they may be "trapped in a foreign country), medical debt, adoption, etc.

Jail scams, wherein someone posing as a relative (ie., grandchild, nephew), or a "law enforcement official" calls (often in the middle of the night) saying your relative is in jail in a foreign country or has assaulted a foreign national and demands "bail" or "security" money.

Most of these scams require that you tell no one or the subject of the scam will "get in trouble."

These are just a few of the scams that occur. If you have doubts or questions, please don't hesitate to let us know before you send a wire.

# WASHINGTON SHORT-FORM INDIVIDUAL ACKNOWLEDGMENT [RCW 42.44.100]

State of Washington
}ss.
County of _Spokane_

I certify that I know or have satisfactory evidence that _Linda Jean Cole_
Name of Signer

is the person who appeared before me, and said

person acknowledged that he/she signed this

instrument and acknowledged it to be his/her free

and voluntary act for the uses and purposes

mentioned in the instrument.

Dated: _October 14, 2023_
Month/Day/Year

_[signature]_
Signature of Notarizing Officer

_Notary Public_
Title (Such as "Notary Public")

---

STATE OF WASHINGTON
Matthew Anderson
Notary Public
Commission Expires: July 19, 2024
Commission # 185853

---

My appointment expires
_July 19, 2024_
Month/Day/Year of Appointment Expiration

Place Notary Seal Above

---- OPTIONAL ----

Although the information in this section is not required by law, it may prove valuable to
persons relying on the document and could prevent fraudulent removal and
reattachment of this form to another document.

Right Thumbprint
of Signer

Top of thumb here

**Description of Attached Document**

Title or Type of Document: _Wire Instructions, Indemnification and Hold Harmless Agreement_

Document Date: _October 14, 2023_ Number of Pages: _1_

Signer(s) Other Than Named Above: _____

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org
Item No. 5906 • Reorder: Call Toll-Free 1-800-876-6827

1

2

3

4

5

6                    SUPERIOR COURT OF THE STATE OF WASHINGTON

7                              FOR SPOKANE COUNTY

8   LINDA COLE and TED COLE,                    Case No. 23-2-04734-32

9        Plaintiffs,

10                                              **ORDER FOR PRELIMINARY**
     vs.                                        **INJUNCTION**

11

12  ERIC ROSS YOUNG and SUSANANN
    LYNETTE YOUNG,

13       Defendants.

14

15       Plaintiffs' Motion for Preliminary Injunction came on for hearing on February 2, 2024 at

16  1:30pm. Michael R. Merritt and Plaintiff Linda Cole were present on behalf of Plaintiffs, and

17  Austin F. Hatcher was present on behalf of the Defendants. The Court having reviewed the record

18  in this case, the moving papers and reply memorandum of Plaintiff and the opposition papers of

19
    Defendants, considering the arguments of counsel, and the Court being fully informed and with
20
    good cause appearing, issues the following order:
21

22       IT HEREBY ORDERED that Plaintiffs' Motion for Preliminary Injunction is

23  GRANTED; Bond is set @ $0.00. Oral ruling incorporated. JE

24

25       IT IS FURTHER ORDERED that:

26       1.      The amount not yet spent by Defendants and remaining from the $362,012.66 that

27  was originally transferred to the Defendants' account be presented in a cashier's check to

28  ORDER FOR PRELIMINARY INJUNCTION          Hawley Troxell Ennis & Hawley LLP
    - 1                                         422 W. Riverside Avenue, Suite 1100
                                                Spokane, Washington 99201
                                                509.624.5265

Plaintiffs' counsel at his office by the close of business Tuesday, February 6, 2024. These funds are to be deposited into the Hawley Troxell Ennis & Hawley, LLP Trust Account and held until the resolution of this action.

2.     The Defendants are also ordered to provide Plaintiffs an accounting of the approximate $82,000 they have already spent of Plaintiffs' $362,012.66 transferred to Defendants' account. The accounting will include an itemization of each expenditure, the purpose of the expenditure, the amount of the expenditure, and the identity of the third party receiving the funds.

DATED this 2 day of February, 2024.


_____
THE HONORABLE JACQUELYN HIGH-EDWARD


*Presented by:*

HAWLEY TROXELL ENNIS & HAWLEY, LLP

_____
MICHAEL R. MERRITT, WBSA # 60094
*Counsel for Plaintiffs*

Mr. Hatcher as to form

63811.0001.16772696.1

ORDER FOR PRELIMINARY INJUNCTION
- 2

Hawley Troxell Ennis & Hawley LLP
422 W. Riverside Avenue, Suite 1100
Spokane, Washington 99201
509.624.5265

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF SPOKANE

---

LINDA COLE and TED COLE,       )
                               )
           Plaintiffs,     )
                               )  SPOKANE COUNTY
vs.                           )  SUPERIOR COURT
                               )  NO. 23-2-04734-32
ERIC ROSS YOUNG AND SUSANANN   )
LYNETTE YOUNG,              )
                               )
           Defendants.    )

---

VERBATIM REPORT OF PROCEEDINGS
HONORABLE JACQUELYN M. HIGH-EDWARD
February 2, 2024

---

APPEARANCES:

FOR THE PLAINTIFFS:

HAWLEY TROXELL ENNIS & HAWLEY LLP
By:   Michael R. Merritt
       Attorney at Law
       422 West Riverside Avenue, Suite 1100
       Spokane, Washington 99201

FOR THE DEFENDANTS:

HATCHER LAW, PLLC
By:   Austin F. Hatcher
       Attorney at Law
       11616 North Market Street, Suite 1090
       Mead, Washington 99021

Korina C. Cox, RPR, CCR No. 3288
Official Court Reporter
1116 W. Broadway Avenue, Department 7
Spokane, Washington 99260
(509) 477-4411

```
 1                        GENERAL INDEX

 2                                                PAGE NO.

 3       February 2, 2024
```

```
 4       Defendants' Motion to Dismiss              4

 5       Plaintiffs' Reply                          8

 6       Defendants' Rebuttal                      13

 7       Court's Oral Ruling                       16

 8       Plaintiffs' Motion for Preliminary Injunction   19

 9       Defendants' Reply                         24

10       Plaintiffs' Rebuttal                      26

11       Court's Oral Ruling                       29

12       Defendants' Motion to Quash Subpoenas     32

13       Plaintiffs' Reply                         34

14       Defendants' Rebuttal                      37

15       Court's Oral Ruling                       38

16       Reporter's Certificate                    44
```

```
17

18

19

20

21

22

23

24

25
```

Cole v. Young, et al. - February 2, 2024
Motion to Dismiss, Motion for Preliminary Injunction, Motion to Quash Subpoenas

```
 1      THE COURT:  Good afternoon, Ms. Cole.  Can you hear me

 2   okay?

 3      You can just give me a thumbs up.

 4      Okay.  Perfect.

 5      We're on the record in the matter of Linda and Ted Cole

 6   and Eric and Lynette Young, cause number 23-2-04732-32.

 7   Ms. Linda Cole is present by video.  Her attorney, Michael

 8   Merritt, is present here in person.  The Youngs are not

 9   present, but their attorney, Austin Hatcher, is present on

10   their behalf, here in person.  We are here on a number of

11   motions, so I'm going to say what I think we're here to

12   do.

13      So we're here to readdress the temporary restraining

14   order.  We're here on a motion to dismiss filed by the

15   Youngs, and we are here on the motion to squash some

16   subpoenas.  Is that what everyone else thinks we're here

17   to do?

18      MR. HATCHER:  Yes, Your Honor.

19      MR. MERRITT:  Yes, Your Honor.

20      THE COURT:  Okay.  I think it makes sense.  And you

21   guys can object if you think there's another order that

22   makes sense.  I think it makes sense to address the motion

23   to dismiss first because, obviously, that would affect the

24   rest of the motions, and then we'll move forward from

25   there.
```

Cole v. Young, et al. - February 2, 2024
Motion to Dismiss, Motion for Preliminary Injunction, Motion to Quash Subpoenas

Appendix A 045
25-80037-FPC    Doc 17-1    Filed 10/24/25    Entered 10/24/25 16:47:26    Pg 40 of 150

```
 1          So with that said, Mr. Hatcher, it's your motion, go
 2     ahead.
 3          MR. HATCHER:  Thank you, Your Honor.
 4          Good afternoon, Your Honor.  Austin Hatcher on behalf
 5     of defendants.  Your Honor, this entire action involves
 6     two claims; one for fraud, one for conversion.  However,
 7     neither state a claim upon which relief can be granted.
 8          Moving to -- first to the claim for fraud.  Plaintiffs,
 9     themselves, entirely predicate this claim for fraud upon a
10     broken promise.  They use the word "promise" four
11     different times in the portion pertaining to their
12     complaint -- pertaining to the claim for fraud, excuse me.
13          And they use that word because that is exactly what
14     this case boils down to.  Plaintiffs allege that
15     defendants promised an ownership interest in a home.  Now,
16     after gifting funds to defendants to accomplish the
17     purchase of said home, plaintiffs allege that that promise
18     was broken.  That, however, does not form the basis for an
19     action of fraud.
20          Plaintiffs argue that a sense of urgency is a
21     misrepresentation of existing fact, however, that is
22     simply the plaintiff's opinion that such urgency and fact
23     existed.  In fact, there was no overriding sense of
24     urgency.  The wire transfer process was completed over a
25     number of days.  It was completed by two different phone
```

                                    4

```
 1    calls made by plaintiff, Ms. Young -- or Ms. Cole, excuse
 2    me, to her credit union in Baker City, Oregon.  It was
 3    completed by the provision of two separate forms by the
 4    Baker Credit -- Baker City Credit Union and the signature
 5    of Ms. Cole on each of those forms.  It also incapsulated
 6    the notarization of those forms.  There was no overriding
 7    sense of urgency.  And even if there was a sense of
 8    urgency, that's not necessarily a fact that defendants
 9    misrepresented.
10        It strains credulity that the credit union in Baker
11    City allowed several hundreds of thousands of dollars to
12    be wired without plaintiffs' authorization.  If the credit
13    union had done so, they should face consequences for those
14    violations of safe banking practices.
15        It also simply doesn't make sense that plaintiffs were
16    able to transfer several hundred thousands of dollars
17    without actually specifying how much money was to be
18    transferred, where it was to be transferred.  Without
19    providing the authority to transfer, it just simply does
20    not make sense that that amount was transferred by the
21    Baker City Credit Union just based on the fact that
22    Ms. Cole jumped on the phone, said it should be
23    transferred, and then got off the phone and let Mr. Young
24    complete the phone call.
25        Plaintiffs authorized the transfers.  They were part of
```

5

```
 1    the transaction.  Whether there was a promise, broken or
 2    not, is not sufficient for a claim for fraud.
 3       Moving to the claim for conversion, plaintiffs lament
 4    the fact they gifted, vehement an electronically signed
 5    gift letter, provided by the mortgage letter -- lender,
 6    $242,000.  Once that amount was gifted and by providing a
 7    signature on a gift letter, plaintiffs can no longer
 8    demand a repayment of that money.
 9       While the amount certainly makes one feel for the
10    plaintiffs and the rigidity of such a rule, it is the
11    rule.  It is the state of case law currently.  The gift
12    letter even states as much, the amount does not need to be
13    repaid.  That's the nature of a gift.  If it was to be
14    repaid, it would have been a loan.
15       Now, as to the personal property, plaintiffs only
16    assert that firearms were converted.  Those firearms have
17    been returned.  Now, plaintiffs assert that there are
18    various other items that need to be returned to them that
19    were converted, allegedly, by the defendants.  But nowhere
20    in the complaint does it mention what items those are.
21    Nowhere in any of the following pleadings is any detail
22    provided as to what those items are.
23       Regardless, defendants have been storing all the
24    personal property that plaintiffs abandoned at defendants'
25    residence for a storage unit paid for by the defendants.
```

6

Cole v. Young, et al. - February 2, 2024
Defendants' Motion to Dismiss

```
1    Defendants have offered to transfer that unit to the
2    plaintiffs.  As of yet, plaintiffs have not completed the
3    transfer of the unit, nor have they come to retrieve their
4    property, which defendants said they would make the
5    storage unit available, not being present.  We can
6    facilitate that with the attorneys being present or simply
7    the storage facility personnel.  But plaintiffs have not
8    done so.
9        Their claim for conversion cannot be supported simply
10   because the plaintiff refuses to accept the return of the
11   alleged personal property -- or alleged converted
12   property.  That makes no sense.
13       Plaintiffs lament the drain on resources for having to
14   initiate and maintain this action, however, they are the
15   party responsible for the fact that the personal property
16   is not in their possession.  First, they left all the
17   personal property in their hasty return to Baker City,
18   Oregon.  Second, they, to date, have refused to retrieve
19   their property or complete the transfer of the storage
20   unit.
21       The Court should not buy the argument that defendants
22   have converted personal property.  They have returned the
23   firearms, which are the only items identified in the
24   complaint, and they have offered to facilitate the return
25   of all other personal property abandoned by the
```

7

```
 1    plaintiffs.
 2         There has been no willful interference with the
 3    ownership of plaintiffs' property; therefore, they have
 4    not sufficiently pleaded a claim for conversion.
 5    Accordingly, Your Honor, it is respectfully requested by
 6    the defendants this action be dismissed in its entirety.
 7         Thank you.
 8         THE COURT:  Thank you.
 9         Mr. Merritt.
10         MR. MERRITT:  The defendants have mixed Rule 56
11    allegations with Rule 12(b)(6) allegations.  They've gone
12    into the facts of the case.  The argument should be the
13    four corners of the complaint; did we plead these claims,
14    if you take all those matters as true, have we pled the
15    claims.
16         If you look at the fraud elements, it's whether there
17    was a statement made, whether defendant knew the statement
18    was false when they made it, whether the plaintiff took
19    the statement as true and relied on the statement and then
20    acted upon that, and whether there was damage related to
21    the fact that they relied upon the statement and that the
22    plaintiff acted.  Okay.
23         The statement -- and they use the word "promise."  It's
24    a statement.  The statement was this, you give us $180,000
25    as a down payment for this house that we can't buy on our
```

8

```
 1    own and you'll be a co-owner on the house and you'll be a
 2    coborrower on the loan and we'll move you in and you'll
 3    have a whole floor to yourselves and we'll live together
 4    and we'll take care of you in your old age.  Okay.
 5        Then they go to transfer the money.  And as we've laid
 6    out in the complaint, that was never the intent.  The
 7    Youngs never put the Coles' names on the purchase
 8    agreement for the home.  They never put their name on the
 9    loan.  When they got to the point where they were going to
10    wire transfer funds, urgency or no urgency, they took two
11    pieces of paper that were one page out of -- out of a
12    four-page set of wire instructions, with no amount on it,
13    put it in front of a notary and said, Linda Cole, please
14    sign this, and she did, because she trusted them.  Okay.
15    That is the second act of fraud.  Okay.  That's two acts
16    of the fraud, the promise and then putting these pieces of
17    paper in front of her representing what those documents
18    were, promising, again, that it was going to be $180,000,
19    and it was 362-plus.  Drained her accounts.
20        How did they even know what was in her accounts unless
21    they had gotten into her accounts at some point and found
22    out what was there?  Linda didn't tell them.  Okay.
23    Drained their accounts down to everything but five bucks.
24    And then she -- Linda calls the Realtor and says, hey, my
25    name's supposed to be on this thing.  They call the Youngs
```

9

1    and get back on the phone with them and say, nope, you

2    can't have that, you can't do that, Mr. Young says no.

3    Okay.

4        The next act of fraud was this.  Linda Young -- Linda

5    Cole, will you please sign your name on this piece of

6    paper, blank piece of paper.  If you look at this Quicken

7    Loan gift letter, first of all, it's in the amount of

8    242,000 and change, which was one of the wires.  It's not

9    362,000 and change.  So they weren't gifted the whole

10   amount, even if they're right, and they're not right.

11       What about the 119,000 that they weren't gifted, are

12   they going to give that back?  So far, no.

13       If you look at the signature on this letter, it says

14   Linda Cole.  This is an electronic signature.  This is not

15   a pen signature.  It looks like Linda Cole's signature

16   because she signed on a piece of paper.  Mr. Young is in

17   IT.  He knows a lot about computers.  I'm a lawyer, and I

18   know enough to do my job, and even I know that I could get

19   an Adobe program or what I call -- I have a Nuance program

20   where you can take a signature from a PDF document, cut it

21   and paste it, and plunk it into another document, and that

22   is exactly what he did here.

23       And you can tell by the texts that it's the same as the

24   circle that's around the S, the thickness, the color, the

25   script.  That's what her signature looks like.  If the

                                10

```
 1    Court would like to see a close-up copy of it, I'd be
 2    happy to give you my copy.  This was an electronic
 3    signature.  This was the third act of fraud because he
 4    said I just need your signature, and he talked to her for
 5    a few minutes about what a gift letter was going to be and
 6    I need this because he told her it's illegal to transfer
 7    money from one state to another unless I have this letter.
 8    Okay.  Lie about the law.
 9        So all this happened, and then he refused to put their
10    name on -- on the loan documents and on the house
11    documents.  This is what's pled in the complaint.  The
12    four corners of the complaint plead a fraud claim.  It is
13    so -- it's the dictionary definition of a fraud claim.
14    You lie to somebody, they take your lies as the truth, you
15    know it's a lie when you lie about it, they act on it by
16    giving you money or the access to money, they take more
17    than they're supposed to take, another act of fraud, and
18    then my client is damaged to the tune of $362,000.  We
19    don't have to get into the facts of the case to know that
20    is a properly prod -- properly pled claim.
21        The conversion claim is simply there's chattel, which
22    is personal property, which is money or property, that
23    essentially they have unlawfully detained it or taken it.
24    I mean, it's theft, only it's civil.  So they took money.
25        And while Linda Cole and her husband were up here in
```

Cole v. Young, et al. - February 2, 2024
Defendants' Motion to Dismiss

```
1    Spokane, Eric Young was down there, quote, let me help you
2    pack the house up.  And he went through the whole house
3    and they took what they wanted and they put it in a
4    trailer and they brought it up here.  They still have
5    things that belong to the Coles.  When the Coles left,
6    they didn't abandon their property.  I know I'm getting
7    into the facts, but some of this has to be addressed.
8        They didn't abandon their property.  The day that they
9    left where they were locked out of the house and they said
10   you can't have your dog back, they went over to the
11   storage unit within days after that.  They got everything
12   they could into a trailer, and they took it with them.
13   There were two units.  That's what they're not telling
14   you.  And there was more of the Coles' property in the
15   second unit that they did not have access to.
16       Now that property's been moved into a unit.  And I've
17   talked to the storage facility about transferring the unit
18   over to Linda Cole's name, and they're deciding whether
19   Linda Cole has to drive several hours to be here for that
20   to occur.  If -- if I don't have to force Linda to drive,
21   then I'll take care of it myself.
22       We need to interview that.  We have sent over an e-mail
23   list to Mr. Hatcher's office.  Now, that wasn't in a
24   pleading, but we sent it to him, because when the Youngs
25   got back to -- or when the Coles got back to their home,
```

12

```
 1    their house was in disarray, and they need -- the barn and
 2    everything, and they needed to do an inventory of tools
 3    and keepsakes and guns and property and documents that
 4    were not there anymore.  And they sent me a list and said
 5    we're not even sure if this is all of it.  But I sent it
 6    over to Mr. Hatcher.  I didn't get a response yet saying
 7    you're wrong, you're a liar, you got everything, it's in
 8    the unit.  I got no response yet.  And it's not Mr.
 9    Hatcher's fault.  He's got to get it from his client and
10    they've got to get it back, so.
11        That was an accurately pled conversion claim, okay.
12    There has been a conversion here.  And there may be other
13    claims as we go through discovery, but this -- this
14    complaint should absolutely survive because this is a
15    fraud claim and it's a conversion claim.  It is textbook,
16    and we pled it properly.
17        THE COURT:  Thank you.
18        Mr. Hatcher.
19        MR. HATCHER:  Thank you, Your Honor.
20        If I may address the last part.  I did not mean to
21    insinuate that plaintiffs have not taken any action.
22    Mr. Merritt has, in fact, I think spoken with the storage
23    facility.  We have been trying to work that out.  I've
24    offered to be present if -- if necessary.  But it's also
25    my understanding that the storage unit wasn't going to
```

13

Cole v. Young, et al. - February 2, 2024
Defendants' Motion to Dismiss

1  release it unless Ms. Cole drove up.  And I think that
2  seems unnecessary, but I think we've both committed to
3  facilitating the transfer of the storage unit, will do so.
4      Your Honor, again, the -- the statement must pertain to
5  an existing fact.  There's case law cited in defendants'
6  brief that a broken promise is not an existing fact.
7  That's not a misrepresentation of an existing fact.  That
8  is a promise to do something in the future.  That does not
9  support a claim for fraud.
10     A claim for fraud must be a misrepresentation of an
11 existing fact.  Yes, there could be statements made.
12 That's the nature of misrepresenting a -- an existing
13 fact, but a broken promise is not an existing fact, and
14 that's where the claim falls apart and does not
15 sufficiently plead a claim for fraud.
16     And again, in regarding the -- the conversion and the
17 fraud claim and the wire transfers, plaintiffs ignore the
18 phone calls.  Plaintiffs talk about how did defendants
19 know the amount in -- or amount in the accounts, that's
20 because Ms. Cole spoke to Baker City.  And in her
21 supplemental declaration, she talks about how she
22 authorized the at least $180,000 transfer and then an
23 additional contemplated, I believe, 62,000 and some change
24 transferred.  And then she also wanted to transfer the
25 $119,000.  That's three separate transfers that she at

14

```
1    least spoke about, via phone, with the Baker City Credit
2    Union.
3        Now, the fact that only two sets of forms were
4    completed, I'm not sure where the breakdown in -- in her
5    thinking that she was completing three separate
6    transactions but only completing two separate wire forms,
7    I'm not sure.  But again, the conversion is predicated on
8    the broken promise regarding the money and the unlawful
9    retention of the firearms, which is no longer an exigent
10   issue.  The firearms have been returned.
11       Accordingly, there is no outstanding claim for
12   conversion.  At the very minimum, the Court could dismiss
13   the 242, I think, that was subject of the gift letter.
14   Potentially the 119,000 remains at issue, but the gift
15   letter, I believe, forecloses the claim for conversion, at
16   least as to the 242,000.
17       Now again, it seems rather incredulous that Ms. Cole
18   signed a blank piece of paper under the false
19   misrepresentation of fact that the mortgage lender needed
20   a signature on a blank piece of paper.  It's the
21   defendants' contention that she signed it electronically
22   via a tablet, which when you select yes or no, that's why
23   the signature line -- or the signature and the width of
24   the line around the "yes" selection is the same width,
25   because she completed it.  It's a standard, you know,
```

| | |
|---|---|
| 1 | electronic completion of a form. You sign in, you receive |
| 2 | an e-mail from the lender, you sign in, you sign your |
| 3 | name, you select yes or no, depending on what selections |
| 4 | are available, the form is completed, and that's -- that's |
| 5 | that. There was no provision of her signature via a blank |
| 6 | piece of paper onto an electronic transfer form. |
| 7 | Thank you, Your Honor. |
| 8 | THE COURT: Thank you. |
| 9 | Okay. The first motion we have today is the Youngs' |
| 10 | motion to dismiss under -- it was filed under 12(b)(6) for |
| 11 | failure to state a claim. |
| 12 | When I look at a motion to dismiss under 12(b)(6), I |
| 13 | have to assume that everything in the complaint is true |
| 14 | and that beyond doubt the plaintiff cannot prove any set |
| 15 | of facts that would justify any type of recovery. Any |
| 16 | possible hypothetical situation conceivably raised by the |
| 17 | complaint defeats the motion. So it's a very high |
| 18 | standard for the defendants to meet. |
| 19 | Secondly, case law states that if the Court is asked to |
| 20 | consider materials outside of the complaint, the motion is |
| 21 | then treated as a motion for summary judgment. And as we |
| 22 | all know, the standard for summary judgment is that |
| 23 | there's no dispute regarding material fact and the |
| 24 | defendant is entitled to judgment as a matter of law. |
| 25 | I will address both standards. I think under the |

16

```
 1    12(b)(6) complaint, I don't agree that the statements
 2    alleged in the complaint regarding what is going to be
 3    transferred for the purchase of the home and reliance on
 4    the statement that the Coles would be included on the
 5    mortgage and the deed is a broken promise.  Nobody -- I
 6    don't even think the Youngs are saying they ever broke a
 7    promise.  I think they're saying they never ever agreed to
 8    that.
 9        But taking it in all the hypothetical situations that
10    could come out of that, I do find that the complaint is
11    more than sufficient to defeat a 12(b)(6) in terms of
12    fraud.
13        Similarly, conversion, the idea that the Coles have
14    now -- they, according to them, in their complaint, which
15    I am to take as true today, they agreed to $180,000.  They
16    did not agree to the 340 -- I can't remember what it is.
17        MR. MERRITT:  362.
18        THE COURT:  360, yeah, thousand dollars.
19        If I keep that as true, if I take it as true, as I'm
20    supposed to, then there's $180,000, about, that was -- is
21    the topic of conversion.  So that's certainly taking
22    the -- the Coles' statement in the complaint as true
23    certainly defeats a 12(b)(6) motion.
24        In terms of summary judgment, certainly there are lots
25    of disputed material fact.  There -- and that's what we
```

Cole v. Young, et al. - February 2, 2024
Defendants' Motion to Dismiss

```
 1   need to go to trial on.  Whether or not this gift receipt
 2   was done in a way that Ms. Cole alleges or Mr. Young
 3   alleges is for the jury to decide, and that's going to be
 4   based on evidence and creditability and witness testimony.
 5   So there are -- there is basically almost no agreed
 6   material facts in this case.  And so the motion to dismiss
 7   doesn't survive the summary judgment standard either.
 8        So I'm going to deny the request to dismiss, both on --
 9   under 12(b)(6) and summary judgment, and then we can move
10   forward to a motion for injunction -- or restraining
11   order.
12        MR. HATCHER:  Your Honor, if I may quickly address --
13        THE COURT:  Mm-hmm.
14        MR. HATCHER:  I did brief why I believe it was still
15   only strictly a motion to dismiss.  I would just like to
16   clarify that defendants -- or whether defendants still
17   have the opportunity to physically brief a motion for
18   summary judgment at a later point if it's deemed plausible
19   or --
20        THE COURT:  Yeah.  I don't think there's a limit on --
21   you just have to meet the scheduling order deadline for
22   dispositive motions.
23        MR. HATCHER:  Thank you, Your Honor.
24        THE COURT:  Mm-hmm.
25        Mr. Merritt.
```
18

```
 1        MR. MERRITT:  Thank you, Your Honor.
 2        Well, as we've shown in the supporting affidavits or
 3    the declarations, the evidence that we've submitted so
 4    far, the verified complaint and the arguments in the
 5    motion, this was what we would consider fraud in the
 6    inducement to enter this agreement to help them out by
 7    supporting money for -- for the down payment of a house.
 8    362,000 and change, it's in the -- I think it's
 9    $362,012.66 or something like that was drained from the
10    account by what, if it was the signing of the contract,
11    would be considered procedural unconscionability, putting
12    two pieces of paper in front of a notary and asking a
13    person to sign without letting them see the entire
14    agreement, without letting Linda Cole know that these are
15    two wires and this is much more than $180,000.
16        Linda was on the phone with the folks, just like
17    Mr. Hatcher said, but then Eric Young took the phone from
18    her and said I'm going to finish this phone call.  And he
19    did because there was a sense of urgency because he wanted
20    that money quickly and the bank was asking her too many
21    questions on the phone and it wasn't happening quickly
22    enough.
23        The -- maybe that's when they found out how much was in
24    those accounts, and maybe that's when they altered the
25    amounts and what the wires were going to be.  There have
```

                                    19

```
 1    been very uncomfortable phone calls between the Coles and
 2    the credit union, and that will be addressed at a later
 3    time.  So the fact that we haven't done anything with the
 4    credit union, that doesn't mean that we won't, because
 5    this whole thing broke apart because of intervention with
 6    the Youngs in this transaction.
 7        And we argued some of this in the prior motion, but the
 8    way the facts went, the Youngs -- or the Coles agreed to
 9    this under the terms of $180,000 and I'll be the on -- the
10    Coles will be on the deed to the house and they'll be on
11    the loan.  They were told by the Youngs that they weren't
12    credit-worthy enough, but that wasn't until the money was
13    out of their account and they realized it was 362,000 and
14    it wasn't 180,000 and Linda Cole started feeling
15    uncomfortable about it and they left Spokane and then they
16    called the Realtor and said is my name on this house and
17    they said no.  And they asked the Realtor, you know, can
18    you call the Youngs -- now, this is in the declarations,
19    can you calls the Youngs and find out.  They call the
20    Youngs, they call them back; you know, the Youngs say no.
21        Okay.  So they've got their 362,000.  They won't get --
22    they won't put them on the house.  They won't put them on
23    the loan of the house because they say they're not
24    credit-worthy enough.  But if you'll remember, Your Honor,
25    in the -- one of very first hearings we had, actually the
```

                                20

```
 1    very first hearing, you swore in the Youngs because you
 2    were going to give them the opportunity to rebut what was
 3    in the declarations.  The only thing factually related to
 4    this case that they uttered while under oath was they had
 5    already spent $82,000 to make themselves credit-worthy
 6    enough to get a loan.  So the people that weren't
 7    credit-worthy were the Youngs, not the Coles.
 8        It is -- it speaks very loudly that we've had several
 9    hearings on this matter and they've had over two months to
10    file an opposition.  And they finally did file an
11    opposition to this, but the Youngs have not once gone
12    under oath, yet, to rebut the allegations in the verified
13    complaint and the supporting declarations and the motion
14    we filed.
15        To me, that says I'm afraid to go under oath because
16    I'm going to have to lie to say this didn't happen.  They
17    had every opportunity to say that Linda's wrong, Linda's
18    wrong and here's my declaration under penalty of perjury,
19    Linda's -- Linda's wrong, she's misinterpreting the facts,
20    this is what happened, it isn't what she's saying
21    happened, it is this other thing.  Okay.  They had every
22    opportunity.
23        And when you're stacking up evidence on a scale, sworn
24    testimony beats no testimony every day of the week.  We
25    haven't had any testimony from them other than to
```

Cole v. Young, et al. - February 2, 2024
Plaintiffs' Motion for Preliminary Injunction

```
 1    authenticate a couple of documents and because Eric Young,
 2    I think in support of the motion to dismiss, said that
 3    Linda Young brought a piece of property for $179,000 in
 4    Spokane at one point, she must be confusing the amount in
 5    this transaction with that.  Okay.
 6        It's a nonsense argument.  They made three arguments in
 7    their opposition.  None of those arguments were even
 8    linked up factually to this case and the allegations that
 9    were made in our papers and the testimony provided by
10    Ms. Cole and -- and the documents we -- we supported this
11    motion with.
12        They make conclusory statements saying we haven't
13    satisfied the burden.  We've satisfied the burden.
14    Certainly the Coles have an equitable right and a legal
15    right to their own money.  And certainly there's an
16    immediate problem if this money isn't frozen and put
17    somewhere where the Youngs can't get to it because they've
18    already spent 82,000, and it is not their money, and,
19    through false pretenses, they stole it.
20        The damage will just increase.  We're already going to
21    have a hard enough time getting the 82,000 back.  There's
22    180,000 that's sitting in an account, and if we could
23    just -- I don't know the exact amount, but it's 180-plus.
24    If we could just freeze that, we could stop the bleeding.
25    We could mitigate some of the damage until we can solve
```

22

```
 1        the rest of these disputes.

 2            They paid off their own debts and did some other things

 3        with this $82,000.  We need to find out what.  And we need

 4        to get that money back.  But in the meantime, to preserve

 5        the status quo, we're asking that the money be taken from

 6        the Youngs, because it's in an investment account that

 7        they hold that their money -- that their name is on.  And

 8        if -- even if it's frozen in that account, they can use it

 9        as funds that are posted in an account with their name on

10        it to buy things, like a house.

11            It needs to be put in, and I would suggest a blocked

12        account, so that we don't have access to it, they don't

13        have access to it, and until the Court orders it, the

14        money cannot be drawn out; we'd have to present a court

15        order to the bank saying this money can be taken and who

16        can take it.

17            I've done this in the context of minor's compromises,

18        but not necessarily something like this.  But that's what

19        I would suggest.  And I -- I believe, absolutely, we've

20        satisfied the standard.  And even if we're a little light

21        here or there, and I don't think we are, they've given you

22        nothing.  They've given you unsupported arguments.  That's

23        it.  No testimony at all.

24            Thank you.

25            THE COURT:  Thank you.
```

                                    23

                  Cole v. Young, et al. - February 2, 2024
                  Plaintiffs' Motion for Preliminary Injunction

```
 1        Mr. Hatcher.

 2        MR. HATCHER:  Thank you, Your Honor.

 3        Ultimately, Your Honor, as to the contention that

 4   defendants have not offered any sort of testimony, they

 5   have submitted declarations, supplemental declaration of

 6   Mr. Young, but I guess that's neither here nor there.

 7        Because what's actually at issue for the motion to

 8   TRO -- for the TRO is injunctive relief.  As briefed by

 9   defendants, even if the Court finds that the plaintiffs

10   have a clear legal and equitable right that has been

11   violated, that they have a well-grounded fear of immediate

12   invasion of that right, and that there's actual and

13   substantial injury, the nature of the injury is one for

14   which injunctive relief is not proper.  Injuries that are

15   compensable by monetary damages do not warrant injunctive

16   relief.  It's from a Washington Supreme Court case, Tyler

17   Pipe Industries v. State Department of Revenue,

18   96 Wn.2d 785 at 795.

19        If plaintiffs have an adequate remedy at law, here they

20   have damages, or alleged damages, in the form of monetary

21   damages, they, quote, have not demonstrated that they are

22   entitled to the extraordinary remedy of injunctive relief.

23   Again, Washington Supreme Court case Kucera v. State

24   Department of Transportation, 140 Wn.2d 200 at 210.

25        Additionally, the TRO, which has currently been in
```

                                        24

```
 1    place since -- for a couple months now, is in invalid, as
 2    no security was placed by the plaintiffs.  This is a
 3    requirement under both CR 65(c) and RCW 7.40.080.  The
 4    only exception allowed is if a person's health or life
 5    would be jeopardized.
 6        Now again, the amount in controversy certainly is -- is
 7    a very significant amount of money.  I'm not meaning to
 8    minimize that at all.  But life or health is not
 9    jeopardized here.
10        The amount in controversy, while substantial, is a sum
11    certain, give or minus some, you know, minor variance,
12    compensable by monetary damages.  Because there exists an
13    adequate remedy at law, plaintiffs are not warranted to be
14    granted injunctive relief.
15        It was error to grant the injunction to this point
16    without a bond, and any such order is invalid.  I provided
17    case law to that affect, that a TRO without bond is -- is
18    invalid.  If the Court requires a security and the
19    security is not placed, the order is invalid.
20        Here, however, both the defendants and the nonparty
21    third-party seller of the home at 1004 East Golden Court
22    have complied in good faith with the TRO.  The purchase
23    has not gone through.  The purchase has not proceeded,
24    despite the legal infirmity of the TRO, because both
25    parties, obviously, do not want to be found in contempt of
```

25

```
 1    an order should the Court find that they are lawfully
 2    restrained.
 3        However, I would like to raise and preserve for
 4    potential appeal, if necessary, that the TRO is invalid as
 5    a legal question without security having been placed.
 6        At this juncture, as only defendants and the nonparty
 7    third-party have been unlawfully restrained in their use
 8    of funds, the only outcome from the motion for TRO today
 9    should be the Court finding that defendants were
10    unlawfully restrained because injunctive relief is not
11    warranted for monetary damages.
12        However, if the Court does find that injunctive relief
13    is warranted, then a security should be placed, which is
14    the requirement under RC 65(c) and RCW 7.40.080, in an
15    amount that would fairly compensate the defendants and the
16    potential nonparty third-party seller of the home for
17    having been restrained unlawfully if the TRO or
18    preliminary injunction is ever dissolved.
19        Thank you, Your Honor.
20        THE COURT:  Thank you.
21        MR. MERRITT:  Something that's been in my mind, it's
22    been looping around for -- since I got this case.  If this
23    was your mom and in the middle of a transaction like this,
24    she pulled the plug and said I don't want to do this, even
25    if it didn't make sense to you, even if you thought she
```

26

```
 1    promised you, even if you needed the money, why don't you
 2    just give the money back?  It's your mother.  There's
 3    something wrong with that.
 4        Those cases you cited about money judgments was about
 5    adequate remedy at law.  If you can go later and get some
 6    money, then yeah, it's the same with interlocutory appeal,
 7    same standard that the appellate court uses.  What we're
 8    talking about here is irreparable harm.  You can --
 9    injunctions were made for freezing money.  That's exactly
10    what they were made for, among other things.  So to say
11    that you can't have an injunction to freeze money is
12    erroneous.
13        What it is is should you freeze the money now because
14    will it be there later, and it won't.  And this is the
15    Coles' retirement.  And what isn't even in the papers yet
16    but I'll give you an offer of proof, Your Honor, and if
17    you want to talk to Linda Cole about this, she's here to
18    answer whatever questions you might have, they were
19    halfway through a remodel of their house in Baker City
20    that Eric Young was managing for them when all this came
21    up.  They've got a roof that's not finished and open
22    rafters, open truss.  This was their retirement and their
23    remodel money.  It's been raining in Oregon and they need
24    that money, and they won't give it back.  And the best we
25    can do today isn't necessarily to walk out of here with
```

27

```
 1     it, but we can stop them from spending it.

 2         And they can go buy a house on their own.  They're not

 3     damaged.  They were spending other people's money.  They

 4     weren't spending their own money.  They haven't lost a

 5     thing.  Mr. Young has a good-paying job.  He says he does.

 6     Go buy a house on your own.  They're both pushing 50.  Do

 7     you need to take your parents' money to do these things?

 8     You don't.  You got a good-paying job, you're pushing 50,

 9     buy a house.

10         I would ask the Court to take care of these folks.

11     They're both 80 or over 80.  They're not going to be able

12     to go out and get another job and make more money.  They

13     need this money back.  And I'd like it to be in a blocked

14     account.  I can set up the account to Mr. Hatcher's

15     satisfaction.  I can file a notice with the Court of the

16     blocked account with the account number so that the Court

17     understands it and it will take a court order to get into

18     that account afterwards.  I've done it before, like I

19     said, with minor's compromise.  I've got to figure out a

20     Wells Fargo around here somewhere that I could do it.  I

21     just need a preliminary injunction to freeze this money

22     today and an order for it -- to the Youngs to wire those

23     funds to the account once it's set up so that's all in

24     there.  And that -- that's all I -- I can offer the Court.

25         Thank you for listening.
```

Cole v. Young, et al. - February 2, 2024
Plaintiffs' Motion for Preliminary Injunction

```
 1          THE COURT:  Mr. Merritt, what would be the problem with
 2     putting the money in your trust account?
 3          MR. MERRITT:  We could do that, too.
 4          THE COURT:  Okay.
 5          MR. MERRITT:  That would be fine.  And then we wouldn't
 6     need anything else and the firm would look after it.
 7          THE COURT:  Okay.
 8          MR. MERRITT:  Yeah.
 9          THE COURT:  Thank you.
10          So the issue of preliminary injunction, the standard is
11     is there a clear and equitable -- clear, equitable, and
12     legal right, it's well-grounded in the fear of invasion of
13     that right, and substantial injury to the plaintiff.  I do
14     think the Coles have met all of those standards.
15          Nobody is disputing that this was their money.  The
16     Youngs aren't disputing that this was their money and that
17     there was an agreement, at least, if you were to figure
18     out what they both agree on, that there was an agreement
19     that they would live together, none of that has occurred,
20     at the cost of the Coles sending their entire life
21     savings, for whatever reason, the entire life savings, to
22     the Youngs.  They will be substantially injured, and
23     that's their estate.  That's, I think, what they were
24     relying on in retirement.  They no longer have a shared
25     home with the Coles -- or with the Youngs because that
```

29

1    fell through as a result of what's been happening.

2        The Coles [sic] have already spent a significant amount

3    of the money on -- not on the home.  They, I think, from

4    reading their position, they fundamentally believe that

5    this is their money now, which has me concerned because

6    the -- the Court and the jury has not weighed in on

7    whether or not it's their money.  And it was clear to me

8    when we first met here, and I know Mr. Hatcher wasn't

9    here, that they had to get more than $180,000 in order to

10   make themselves credit-worthy.  He said he paid off a

11   truck and some other things.  So they're not

12   credit-worthy.

13       So getting this money back after it's spent is not

14   going to happen in the Coles' lifetime.  So I'm going to

15   grant the injunction.  I am going to set the bond at zero

16   dollars because I think that's appropriate, given the idea

17   that everybody agrees that this is the Coles' money and

18   the idea that the Coles are in their 80s and retired, and

19   I'm assuming are living on the fixed income, and the fact

20   I haven't been presented any damages.  So I don't know if

21   they put -- the Youngs put down their own money for a down

22   payment or escrow, no earnest money.  I don't know what

23   their damages would be if this real estate contract falls

24   through.

25       I also don't believe that I need to, under the statute,

                          30

```
 1    consider third-party damages, because third party isn't a
 2    party to this injunction.  They are not -- they have every
 3    right to back out, probably, at this point.  So the Court
 4    is not doing anything to this third party at all.  So I
 5    don't need -- and I haven't been presented any other
 6    damages, even if I could.
 7        So I'm going to order that the -- there's an accounting
 8    by Tuesday, February 5th -- 6th -- is that what that says,
 9    and a cashier's check taken to Mr. Merritt's office by
10    close of business on Tuesday for the $362,000.12 --
11        MR. MERRITT:  Well, I think --
12        THE COURT:  -- minus the 82,000.
13        MR. MERRITT:  All right.  Right.
14        THE COURT:  But I want an accounting of everything
15    that's been spent from the total sum that was transferred.
16        And then, Mr. Merritt, you will hold it in your trust
17    account until we can get to resolution.
18        MR. MERRITT:  Thank you, Your Honor.
19        THE COURT:  Anything else in terms of the injunction?
20        MR. MERRITT:  Not from me, Your Honor.
21        THE COURT:  Mr. Hatcher?
22        MR. HATCHER:  So, Your Honor, is the Court making a
23    determination as to the validity or invalidity of the gift
24    letter at this point?
25        THE COURT:  No.
```

31

```
 1        MR. HATCHER:  Okay.

 2        THE COURT:  No.  I'm saying everybody agrees it's their

 3   money.  Whether it was gifted, whether there was fraud,

 4   that's for the jury to decide.

 5        MR. HATCHER:  Uh-huh.

 6        THE COURT:  But because everybody agrees it's their

 7   money, then the damages to the Youngs, I haven't been

 8   presented with what those damages would be and that's what

 9   a bond is supposed to be --

10        MR. HATCHER:  Uh-huh.

11        THE COURT:  -- related to.  So that's why I'm setting

12   it at zero.  Okay?

13        MR. HATCHER:  And the -- I mean, typically the bond has

14   been, you know, roughly 10 percent of the amount in

15   controversy.  Will the Court agree to the -- that amount

16   as -- as an unlawful restraint or just --

17        THE COURT:  No.

18        MR. HATCHER:  -- a zero?

19        THE COURT:  Zero.

20        MR. HATCHER:  Thank you, Your Honor.

21        THE COURT:  Okay.

22        Let's go to the motion to quash.

23        MR. HATCHER:  Your Honor, while the correction to the

24   factual basis to the opposition to motion to quash by my

25   friend, Mr. Merritt, is appreciated, it -- it doesn't
```

                                32

```
 1    remove the fact that the subpoenas were not validly served
 2    in compliance with CR 45(b)(2), which requires five days'
 3    notice prior to the service of those subpoenas.  The rule
 4    uses mandatory language, shall be made no fewer than five
 5    days prior to the service of subpoena.  And as that rule's
 6    not complied with, this subpoena should be quashed.
 7        Assuming that is not enough to convince the Court that
 8    the subpoenas should be quashed, the substance of the
 9    subpoenas is overbroad.  It implicates constitutional
10    protections of privacy.  It would sweep into that subpoena
11    banking records of the defendants, which would also
12    disclose people with whom the defendants have conducted
13    transactions.  Typically, when purchasing a home and
14    seeking approval from a lender, you know, three years is a
15    pretty typical timeline for banking records to be turned
16    over to the lenders so that they can determine
17    credit-worthiness.  So that's three years worth of history
18    with nonparties that can potentially be swept up.
19        The subpoenas seek the entire file from the Realtors
20    and title company.  So again, banking records, you know,
21    potentially phone conversations or conversations with
22    other people that aren't either officers, employees, et
23    cetera, of the Realtors and title company.  Basically, the
24    subpoenas are just overbroad.
25        So in addition to the rule basis on which the subpoena
```

33

Appendix A 075

25-80037-FPC    Doc 17-1    Filed 10/24/25    Entered 10/24/25 16:47:26    Pg 70 of 150

```
 1    should be quashed, I believe the subpoena should also be
 2    quashed due to the sensitive information contained therein
 3    and the constitutional -- constitutional prosections of
 4    privacy.
 5        Again, the subpoenas are based -- and again, CR 26
 6    discovery is -- is broad in scope, but plaintiffs posit
 7    that they will be able to determine whether the broken
 8    promise was, in fact, communicated to the Realtors and
 9    title company, which ultimately won't save the fact that
10    the fraud is based on a broken promise as -- as argued in
11    the motion to dismiss.  And I know the Court denied
12    that -- that motion, but again, it's all predicated on
13    this communication that the name of the Coles will be put
14    on the title, which I believe is not germane to the action
15    of what exactly the fraud they are alleging, which now
16    they are shifting it to strictly the completion of the
17    wire transfer forms.
18        So again, Your Honor, I believe this falls out of even
19    the broad scope of discovery, and for the constitutional
20    protections and CR 45(b)(2), the subpoenas should be
21    quashed.
22        Thank you.
23        THE COURT:  Thank you.
24        Mr. Merritt.
25        MR. MERRITT:  Thank you.
```

34

1    Yes, we served the subpoenas too early.  The five-day
2    requirement is to allow Mr. Hatcher and his clients to
3    challenge the subpoenas.  Nothing's been produced.  My
4    paralegal, with really good initiative, sent it out to
5    service folks a little bit early.  It got served in two
6    days instead of five.  And originally I thought it was
7    five days until we -- about five minutes after we filed
8    the document and I looked at that affidavit and said okay,
9    we got to fix this.
10    So even though it's procedurally incorrect, the
11    safeguard that this five days provides has been satisfied.
12    Mr. Hatcher's been able to get this motion on, this issue
13    is before the Court on whether there are constitutional
14    protections of privacy and whether the information is
15    relevant or whether the requests are overbroad.
16    I would argue that the requests are not overbroad.
17    They -- we allege that they stole this money from the
18    Coles to buy this house and to do other things for
19    themselves and have money in the bank.  At the very least,
20    we should be able to look at the records for this purchase
21    to determine, number one, is the Coles' name mentioned
22    anywhere in that file, did they do anything to put the
23    Coles' name on this house, whether through the title
24    company documents or realty company documents; is that
25    gift letter in fact a gift letter, is Quicken Loans even

                              35

```
 1    the lender, did they offer the gift letter in the package
 2    to either one of these entities as this is a -- this is
 3    the gift letter we're going to use for the transaction.  I
 4    mean, they've offered it to the Court, to me, but we don't
 5    know whether they've offered it to them.
 6        How much have they pledged as the down payment.  What
 7    were they planning to do with the rest of that money?
 8    It's part of that accounting that we're looking for.  Were
 9    they going do put 180 down like they said they originally
10    were going to?  Did they need to put 240 down?  Is that
11    why they took the rest of the money?  There's a lot we
12    need to know, and we would need to go to the source
13    documents.  I'd like to know who the lender is, and we're
14    not going to find that out until I subpoena these
15    documents.
16        The entities are ready to produce the documents.  I've
17    told them no until this is satisfied.  But I can't imagine
18    any more relevant documentation to this case and the
19    things that the Coles have to prove by the time we move to
20    trial than the source documents on the purchase from the
21    stolen money.  And you can't say you have a constitutional
22    right to privacy on how you're spending the money you just
23    stole.  The people that you stole it from need to know
24    where it is and what you're doing with it and where you've
25    had it so that they can show that, in fact, it was stolen
```

36

```
 1    and that you do have it and that you've been spending it
 2    on things.
 3        From the Youngs, through written discovery, I hope to
 4    get that accounting, or at least some receipts and things
 5    like that, how they spent the $82,000.  This is just
 6    another avenue by which I'm trying to find out where the
 7    money went.  I think everything in that file, in both of
 8    those files, is relevant.  What they're telling other
 9    people about the Coles, about their deal, about how much
10    money they have, about whether that money is theirs, it's
11    all relevant to this case because it will affect
12    credibility of the parties, and credibility's going to
13    matter when it's a he-said, she-said and we're in front of
14    a jury.  So I would say all of this is relevant and we
15    should be able to get at all of it.
16        THE COURT:  Thank you.
17        Mr. Hatcher.
18        MR. HATCHER:  Your Honor, if the lender and the
19    information that the lender has received is -- is
20    pertinent, then the subpoena should be addressed to the
21    lender, not the Realtor and the title company.  That's not
22    going to disclose whether Quicken Loans provided the gift
23    letter, whether Quicken Loans considered the gift letter
24    in granting the -- the mortgage.  So I think these are the
25    wrong parties for the subpoena.
```

37

```
 1        And again, per the rule, subpoenas are not validly
 2    served.  It required a motion to shorten time to bring
 3    this motion.  I received notice while I was on my notice
 4    of unavailability.  I was in my drill period for the USMC
 5    reserves.  So it required some -- some late nights.  I got
 6    home at, like -- or to my hotel, at, like, 1800, 1900, 6,
 7    7 p.m., and then I was in a field status the next day so I
 8    was unable to work on this at all.  And then I had to fly
 9    back from the west side of the State to get this.
10        So yes, there are procedural safeguards, but it
11    requires significant lifting to -- to make this happen
12    today, and that's the purpose and protection of CR
13    45(b)(2).  And that's why if -- if these subpoenas are
14    valid and -- and validly served and necessary, then they
15    should be served properly.
16        Thank you, Your Honor.
17        THE COURT:  Okay.
18        I have taken a look at the -- I don't think anybody
19    disagrees that the subpoenas were served on the third
20    parties within the five-day waiting period.  Although I do
21    agree that the five-day waiting period's intent really is
22    to make sure that we can get into court on a motion to
23    quash and that those documents aren't revealed or sent
24    prior to the hearing of that motion.
25        So while I think that there was a violation of the
```

38

```
 1    waiting period, I do think that the subpoenas were served
 2    appropriately and that the service was fine.  It was just
 3    the timing of the service.
 4        I don't think -- I think being here today and having
 5    not received the documents overcomes that error in the
 6    service.
 7        In regard to the motion to quash, as everybody's talked
 8    about, discovery is very, very broad, and it's intended to
 9    get at information that could lead to relevant
10    information.  So it doesn't even require a showing of
11    relevant information.  I do think, based on all of the
12    parties' conversations around the purchase of this home,
13    which is at the center, really, of this money transfer and
14    dispute, that that is important, particularly in relation
15    to the fraud claim, as to whether or not there was a
16    statement made that indicated to third parties that the
17    Coles be included on this home.
18        So I am going to deny the motion to quash.  I'm going
19    to -- I'm going to allow the documents to be sent out.
20        And, Mr. Merritt, I'll just caution you and your
21    paralegal not to do that so we don't have another race to
22    the courthouse so we can have this motion heard prior to
23    the documents being revealed again.
24        MR. MERRITT:  Can I clarify that again?
25        THE COURT:  Sure.
```

                                    39

```
 1        MR. MERRITT:  You want me to -- you're denying --

 2        THE COURT:  Just make sure you're complying in the

 3    future.

 4        MR. MERRITT:  Oh, absolutely.  I'm sorry.

 5        THE COURT:  Yeah.

 6        MR. MERRITT:  Yeah.

 7        THE COURT:  Okay.  Is there anything else?

 8        Sorry.  I meant to address the invasion of privacy.  I

 9    don't think that this -- I haven't been presented with

10    information that indicates that what's in these documents,

11    there is some kind of claim of privilege or revealing of

12    information that would embarrass, harass, the Youngs.  I

13    haven't been presented with that type of information.

14    Where they spend their money, to whom they send money, I

15    haven't been presented with anything that indicates that

16    that would be over and above what normal citizens do with

17    their bank account.

18        If there is something that then becomes an invasion of

19    privacy, so, for instance, I had a motion to quash on a

20    third-party subpoena for bank records for a person who's

21    practicing law.  Well certainly, payments from clients are

22    going to be things that aren't going to want to be

23    revealed.  So I haven't been presented with anything that

24    indicates that this would be either privileged or an

25    unnecessary intrusion.  It is closely related to the
```

40

```
 1      conflict here, and so I -- I'm going to go ahead and deny
 2      the quash, and you guys can move forward with discovery.
 3          MR. MERRITT:  Thank you, Your Honor.
 4          THE COURT:  Okay.
 5          I'd like to get those orders entered today.  I know we
 6      have three orders coming in.  So if you could circulate
 7      them, especially since I set a deadline for Tuesday.
 8          MR. MERRITT:  I will go back to my office and put the
 9      one order together.  Are you going to do the orders on
10      your motions or do you want me to do them?
11          MR. HATCHER:  If you don't mind taking the order.
12          MR. MERRITT:  I'll do the orders and I'll circulate
13      them by Mr. Hatcher and then -- actually, if you don't
14      mind, because of the time constraints, I'll just send them
15      to both of you at the same time, and then if you have an
16      objection, just state it.  Would that be all right?
17          MR. HATCHER:  I suppose.
18          THE COURT:  Yeah.  I'll wait 'til the end of the day to
19      sign them.
20          MR. MERRITT:  Okay.
21          THE COURT:  And we'll get them back to you before we
22      leave today.
23          MR. MERRITT:  Thank you.
24          THE COURT:  Am I -- clarification --
25          MR. MERRITT:  Am I e-mailing them directly to
```

41

```
 1    Ms. Czako?

 2         THE COURT:  Yeah.  Czako.

 3         MR. MERRITT:  Czako.  Sorry.  Got to say that right.

 4         THE COURT:  It took me a while to get that down, too.

 5         Any clarification?

 6         MR. MERRITT:  No, Your Honor.

 7         MR. HATCHER:  Your Honor, just to be clear, so no

 8    redactions of nonparties for the period preceding the

 9    amounts being wired in question?  Could be one way --

10    they're not my clients, but potential nonparties from, you

11    know, however many years of banking records are disclosed,

12    could we communicate to the deponents to redact that

13    information?

14         THE COURT:  I -- I don't know why we would.

15         MR. HATCHER:  Just to protect potential invasions.  As

16    I briefed, you know, it's kind of a presumption that

17    banking records are sensitive information and who you

18    conduct transactions with.  And so if the records could be

19    redacted preceding kind of the acts or the predicate for

20    this action, that would be something that I request.  But

21    again, not my clients.  I'm not necessarily advocating for

22    them.  I'm just taking privacy seriously and trying to

23    protect people that aren't involved in the action.

24         THE COURT:  Sure.  Understood.

25         What we can do is we can do a protection order in
```

42

```
 1      regard to the banking records.  If you guys want to drop
 2      an agreed protection order, we'll go ahead and do that so
 3      it can't be released individually to the Coles but it
 4      can -- they can view them in Mr. Merritt's office.
 5          MR. MERRITT:  Okay.
 6          THE COURT:  If there are significant banking records
 7      outside of the time period -- I don't know when they
 8      started talking about this.  I don't know if that period
 9      of time would be relevant.  So I think the best thing to
10      do is if there are banking records over a year from the
11      time that the closing of the home was supposed to occur,
12      then we'll have those kept in your office.
13          MR. MERRITT:  Okay.
14          THE COURT:  Okay.
15          MR. MERRITT:  Thank you.
16          MR. HATCHER:  Thank you, Your Honor.
17          THE COURT:  Thank you.
18      Thank you, Ms. Cole.
19          THE CLERK:  All rise.
20                  (COURT IN RECESS.)
21
22
23
24
25
```

Cole v. Young, et al. - February 2, 2024
Defendants' Motion to Quash Subpoenas

```
 1              C E R T I F I C A T E

 2

 3       I, Korina C. Cox, do hereby certify:

 4       That I am an Official Court Reporter for the Spokane

 5    County Superior Court, sitting in Department No. 7, at

 6    Spokane, Washington;

 7       That the foregoing proceedings were taken on the date

 8    and place stated therein;

 9       That the foregoing proceedings are a full, true and

10    accurate transcription of the requested proceedings, duly

11    transcribe by me or under my direction, including any

12    changes made by the trial judge reviewing the transcript;

13       I do further certify that I am not a relative of,

14    employee of, or counsel for any parties, or otherwise

15    interested in the event of said proceedings.

16

17       WITNESS MY HAND AND DIGITAL SIGNATURE this 10th day of

18    February, 2024.

19

20

21            ____C. Cox

22            _____

23            Korina C. Cox, RPR, CCR No. 3288
              Official Court Reporter
24            Spokane County, Washington

25
```

44

Cole v. Young, et al. - February 2, 2024
Motion to Dismiss, Motion for Preliminary Injunction, Motion to Quash Subpoenas

Appendix A 086
25-80037-FPC    Doc 17-1    Filed 10/24/25    Entered 10/24/25 16:47:26    Pg 81 of 150

(Clerk's Date Stamp)

 **SUPERIOR COURT OF WASHINGTON COUNTY OF SPOKANE**

Petitioner: LINDA and TED COLE

vs.

Respondent: ERIC and SUSANN YOUNG

**CASE NO. 23-2-04734-32**

**ORDER**

**[x] Clerk's Action Required
NEXT HEARING: 2/20/24 @ 4:30
P.M. COURTROOM 403**

I.     BASIS

Linda and Ted Cole brought a motion for contempt against Eric and Susann Young for failing to abide by the court's February 2, 2024 order requiring them to transfer the remaining money in dispute to the Cole's attorney's trust account by February 6, 2024 and provide an accounting of any money spent out of the $362,012.66.

II.     FINDING

1. The Youngs assert that the court's order is void because the court failed to set a bond.

2. It is undisputed that the Youngs have not provided the transfer of money or the accounting.

ORDER
CI-03-0300 (Rev 03/2001)

PAGE 1 OF 3



25-80037-FPC     Doc 17-1     Filed 10/24/25     Entered 10/24/25 16:47:26     Pg 82 of 150

3.   The original preliminary injunction was entered on November 9, 2023.  The Youngs have continued this hearing once so they could retain counsel and once because they failed to respond to the motion for preliminary injunction and instead filed a motion to dismiss.  The court, at this time, could have chosen, under local rule to grant the Coles' requested relief but gave them additional time to respond.  The matter has been postponed at the Youngs' request until February 2, 2024.

4.   The court set a bond on December 15, 2023, of $0 and another bond on the temporary order in the amount of $0. The court finds that in its discretion, this is a reasonable amount.  Both parties agree that the money belonged to the Coles and that the Youngs did not provide anything in exchange for the money.  Both parties agree that at one time, there was an agreement to transfer some money to purchase a home.  The downpayment was $180,000.00.  The Youngs alleged that the ~$80,000.00 they spent of the $362,012.66 was also agreed so the Youngs could become credit worthy.  The Coles are elderly (in their 80s) and this money constitutes their life savings in cash.  The Youngs have provided no information on possible damages for an improper injunction.  On February 2, 2024, the court secured any potential damages (that were foreseeable by the court) to the Youngs by ordering the transfer of money into the Coles' attorney's trust account, preserving the money for the prevailing party.

5.      Although the court finds that a $0 was within its discretion and reasonable.  To get the Youngs to comply with the order, the court will set bond at $100.00.  It is appropriate for the court to consider daily sanctions against the Youngs at the next hearing.

IT IS ORDERED that:

The Youngs shall transfer the remaining money to the Coles' attorney's trust account within 24 hours of this order. They shall also provide a full accounting of any money spent of the $362,012.66 with supporting evidence within 24 hours of this order. A review hearing will be held on Tuesday, February 20, 2024, at 4:30 p.m. to determine whether the Youngs are in contempt of court. Eric and Susann Young shall appear in person.

*Judge Jacquelyn High-Edward 2/14/2024 3:53:16 PM*

### DECLARATION OF SERVICE

I, Cat Czako, certify that on February 14, 2024, I served a copy of this Order to:

[ x ] E-Mail
[ ] US Mail
[ ] Hand Delivery
[ ] _____

[ x ] E-Mail
[ ] US Mail
[ ] Hand Delivery
[ ] _____

AUSTIN HATCHER
11616 N Market St Unit 1090
Mead, WA 99021-1837
austin.f.hatcher@gmail.com

MICHAEL RAYMOND MERRITT
422 W Riverside Ste 1100
Spokane, WA 99201-0302
mmerritt@hawleytroxell.com

I certify under penalty of perjury pursuant to the laws of the State of Washington that the foregoing Statement is true and correct.

Date: February 14, 2024

Cat Czako, Judicial Assistant to
Jacquelyn M. High-Edward
Superior Court Judge

ORDER
CI-03-0300 (Rev 03/2001)

PAGE 3 OF 3



**SUPERIOR COURT OF WASHINGTON COUNTY OF SPOKANE**

Petitioner: LINDA and TED COLE

vs.

Respondent: ERIC and SUSANN YOUNG

(Clerk's Date Stamp)

**CASE NO. 23-2-04734-32**

**ORDER**

**[x] Clerk's Action Required
NEXT HEARING: 2/21/24 @ 4:30
P.M. COURTROOM 403**

I.    BASIS

Linda and Ted Cole brought a motion for contempt against Eric and Susann Young for failing to abide by the court's February 2, 2024, order requiring them to transfer the remaining money in dispute to the Cole's attorney's trust account by February 6, 2024, and provide an accounting of any money spent out of the $362,012.66.  The Youngs did not appear at the hearing on February 15, 2024.  Their attorney, Austin Hatcher appeared.  At the time of the hearing, the money and accounting had not been provided.  The court again ordered the Youngs to provide an accounting and transfer all money into the Cole's attorney's trust account. They were also ordered to appear in person.

ORDER
CI-03-0300 (Rev 03/2001)

PAGE 1 OF 3

II.     FINDINGS

1.  The Youngs provided a self-created accounting of the funds showing that they were negative $50,000.00.

2.  The Youngs transferred $100.00 into the Cole's attorney's trust account.

3.  The Youngs withdrew $119,000.00 in a cashier's check and sent it to the Coles via Fed X.  The Youngs admit that the $119,000.00 belongs to the Coles.  The remaining money is not accounted for.

4.  The Youngs are in contempt of court for failing to follow the court order.

5.  The Youngs have failed to account for all the money and this failure is intentional and in bad faith.

IT IS ORDERED that:

The Youngs shall provide bank statements and investment account statements from the time the money was transferred until today by 4:00 p.m. today (February 21, 2024.)   If the Youngs fail to provide the requested documents without good cause, a sanction of $1,000.00 a day will be assessed.

A review hearing will be held on Wednesday, February 21, 2024, at 4:30 p.m. to determine whether the Youngs are in contempt of court.  Eric and Susann Young shall appear in person.

The Youngs are sanctioned $2,500.00 for failing to abide by the court order as well as reasonable attorney fees for today's hearing.

*Judge Jacquelyn High-Edward 2/21/2024*

ORDER
CI-03-0300 (Rev 03/2001)

**DECLARATION OF SERVICE**

I, Cat Czako, certify that on February 21, 2024, I served a copy of this Order to:

[ x ] E-Mail                              [ x ] E-Mail
[ ] US Mail                            [ ] US Mail
[ ] Hand Delivery                [ ] Hand Delivery
[ ] _____      [ ] _____

AUSTIN HATCHER               MICHAEL RAYMOND MERRITT
11616 N Market St Unit 1090       422 W Riverside Ave Ste 1100
Mead, WA 99021-1837            Spokane, WA 99201-0302
austin.f.hatcher@gmail.com        mmerritt@hawleytroxell.com

I certify under penalty of perjury pursuant to the laws of the State of Washington that the foregoing Statement is true and correct.

Date: February 21, 2024

_____
Cat Czako, Judicial Assistant to
Jacquelyn M. High-Edward
Superior Court Judge



**SUPERIOR COURT OF WASHINGTON COUNTY OF SPOKANE**

(Clerk's Date Stamp)

Petitioner: LINDA and TED COLE

vs.

Respondent: ERIC and SUSANN YOUNG

**CASE NO. 23-2-04734-32**

**ORDER**

**[x] Clerk's Action Required
NEXT HEARING: 2/27/24 @ 8:30
AM COURTROOM 403**

I.    BASIS

Linda and Ted Cole brought a motion for contempt against Eric and Susann Young for failing to abide by the court's February 2, 2024, order requiring them to transfer the remaining money in dispute to the Cole's attorney's trust account by February 6, 2024, and provide an accounting of any money spent out of the $362,012.66. The Youngs did not appear at the hearing on February 15, 2024. Their attorney, Austin Hatcher appeared. At the time of the hearing, the money and accounting had not been provided. The court again ordered the Youngs to provide an accounting and transfer all money into the Cole's attorney's trust account. They were also ordered to appear in person. At a review hearing, the Young's were ordered to provide bank statements from the time the money transferred to the current day from every

ORDER
CI-03-0300 (Rev 03/2001)

PAGE 1 OF 3

account the money touched. The Youngs were provided a third chance to bring complete accountings of the missing money.

II. FINDINGS

1. The Youngs provided screen shots from Fidelity with balances but did not provide screen shots from the transactions. The Youngs provided Ms. Young's account information.

2. The provided information did not answer the questions about the missing funds. The court has now calculated the unaccounted funds at $39,107.70.

3. With no other options left at its disposal and with no prior sanctions being effective to force compliance, the court issued a civil bench warrant for Eric Young.

IT IS ORDERED that:

In addition to the previous orders, Michael Merritt shall be allowed to place a boot on the RV located in Slot 181 at Secure It Self-Storage on Nevada.

The Youngs are fined $7,500.00 for their continued intransigence.

The Coles are awarded their reasonable attorney fees for preparation and appearance at today's hearing.

The parties may engage an agreed forensic accountant to review the financials and provide an accounting. Such an accounting that shows no available funds will satisfy this order. A posting of the bond will satisfy this order. A deposit of $39,107.70 into Mr. Merrit's trust account will satisfy this order.

A review hearing will be held on February 27, 2024, at 8:30 a.m. in Courtroom 403. The Youngs must appear in person. The Coles and Mr. Hatcher may appear by Zoom.



Judge Jacquelyn High-Edward 2/23/2024 9:50:30 AM

**DECLARATION OF SERVICE**

I, Cat Czako, certify that on February 22, 2024, I served a copy of this Order to:

[ x ]  E-Mail                                          [ x ]  E-Mail
[ ]  US Mail                                           [ ]  US Mail
[ ]  Hand Delivery                                     [ ]  Hand Delivery
[ ]  _____                           [ ]  _____

AUSTIN HATCHER                                         MICHAEL RAYMOND MERRITT
11616 N Market St Unit 1090                            422 W Riverside Ave Ste 1100
Mead, WA 99021-1837                                    Spokane, WA 99201-0302
austin.f.hatcher@gmail.com                             mmerritt@hawleytroxell.com

I certify under penalty of perjury pursuant to the laws of the State of Washington that the foregoing Statement is true and correct.

Date:  February 22, 2024

_____
Cat Czako, Judicial Assistant to
Jacquelyn M. High-Edward
Superior Court Judge

(Clerk's Date Stamp)



**SUPERIOR COURT OF
WASHINGTON
COUNTY OF SPOKANE**

Petitioner: LINDA and TED COLE

vs.

Respondent: ERIC and SUSANN YOUNG

**CASE NO. 23-2-04734-32**

**ORDER ON REVIEW OF
CONTEMPT**

**[x] Clerk's Action Required
NEXT HEARING: 2/29/24 @ 9:00
AM COURTROOM 403**

I.     BASIS

The parties met on Tuesday, February 27, 2024, to discuss Eric Young's incarceration for civil contempt and progress with compliance with the court's order on the same day.

II.     FINDINGS

1.   A joint accountant has not been selected at this point.  The parties have conferred and discussed a possible selection.

2.   No further financial information has been provided to the court or counsel for the plaintiffs.

ORDER
CI-03-0300 (Rev 03/2001)

PAGE 1 OF 2

IT IS ORDERED that:

Mr. Young will remain incarcerated until the money is transferred into the court registry or Mr. Merrit's trust account, or a full accounting of the funds has been provided. The defendants are ordered to comply with all orders previously entered. Bond and conditions of release remain the same.

A review hearing will be held on Thursday, February 29, 2024, at 9:00 a.m. in courtroom 403.

Judge Jacquelyn High-Edward 2/27/2024 9:00:29 AM

## DECLARATION OF SERVICE

I, Cat Czako, certify that on February 27, 2024, I served a copy of this Order to:

| | |
|---|---|
| [ x ] E-Mail | [ x ] E-Mail |
| [ ] US Mail | [ ] US Mail |
| [ ] Hand Delivery | [ ] Hand Delivery |
| [ ] _____ | [ ] _____ |
| AUSTIN HATCHER | MICHAEL RAYMOND MERRITT |
| 11616 N Market St Unit 1090 | 422 W Riverside Ave Ste 1100 |
| Mead, WA 99021-1837 | Spokane, WA 99201-0302 |
| austin.f.hatcher@gmail.com | mmerritt@hawleytroxell.com |

I certify under penalty of perjury pursuant to the laws of the State of Washington that the foregoing Statement is true and correct.

Date: February 27, 2024

Cat Czako, Judicial Assistant to
Jacquelyn M. High-Edward
Superior Court Judge

ORDER                                                                    PAGE 2 OF 2
CI-03-0300 (Rev 03/2001)



**SUPERIOR COURT OF
WASHINGTON
COUNTY OF SPOKANE**

Petitioner: LINDA and TED COLE

vs.

Respondent: ERIC and SUSANN YOUNG

**CASE NO. 23-2-04734-32**

**ORDER ON REVIEW OF
CONTEMPT**

**[x] Clerk's Action Required
NEXT HEARING: 3/4/24 @ 9:00 AM
COURTROOM 403**

I.     BASIS

The parties met on Thursday, February 29, 2024, to discuss Eric Young's incarceration for civil contempt and progress with compliance with the court's order. The parties met again on March 1, 2024, to discuss the same topic.

II.     FINDINGS

1.   A joint accountant was retained on Tuesday, February 27, 2024. On February 29, 2024, the accountant had represented to counsel for the Coles that the accounting is being scanned to his email. The hearing was set to start at 9:00 a.m. As of 9:15 a.m., the accounting had not been received and there is no information whether the accounting is a complete accounting of all the funds in question.

ORDER
CI-03-0300 (Rev 03/2001)

PAGE 1 OF 3

2. The court continued the hearing to March 1, 2024, so the parties and court could receive and review the accounting.

3. Immediately after the conclusion of the hearing, the parties and court received the accounting. The conclusion from the analysis was that the funds in question could not be accounted for with the information provided.

4. Later that evening, after court hours, a supplemental report was provided that included additional information provided by the Youngs.

5. The supplemental report came to the same conclusion.

6. The Youngs now object to the agreed expert.

7. The Youngs have retained their own certified public accountant.

8. The court has not received any additional information from the Youngs since Tuesday, February 20, 2024, despite their representation that they have provided additional information.

9. The Youngs shall provide all information they want the court to consider to the court and the Coles.

10. To date, the Youngs have not complied with the court order.


IT IS ORDERED that:

Mr. Young will remain incarcerated until the money is transferred into the court registry or Mr. Merrit's trust account, or a full accounting of the funds has been provided by an agreed expert. The defendants are ordered to comply with all orders previously entered. Bond and conditions of release remain the same.

A review hearing will be held on Monday, March 3, 2024, at 9:00 a.m. in courtroom 403.

Appendix A 099
25-80037-FPC    Doc 17-1    Filed 10/24/25    Entered 10/24/25 16:47:26    Pg 94 of 150



Judge Jacquelyn High-Edward 3/1/2024 11:12:46 AM

**DECLARATION OF SERVICE**

I, Cat Czako, certify that on February 27, 2024, I served a copy of this Order to:

[ x ] E-Mail                                    [ x ] E-Mail
[ ] US Mail                                     [ ] US Mail
[ ] Hand Delivery                               [ ] Hand Delivery
[ ] _____        [ ] _____

AUSTIN HATCHER                                  MICHAEL RAYMOND MERRITT
11616 N Market St Unit 1090                     422 W Riverside Ave Ste 1100
Mead, WA 99021-1837                             Spokane, WA 99201-0302
austin.f.hatcher@gmail.com                      mmerritt@hawleytroxell.com

I certify under penalty of perjury pursuant to the laws of the State of Washington that the foregoing Statement is true
and correct.

Date:  February 27, 2024

_____

Cat Czako, Judicial Assistant to
Jacquelyn M. High-Edward
Superior Court Judge

**PAINE HAMBLEN, P.S.**

**April 10, 2024 - 1:40 PM**

**Filing Motion for Discretionary Review**

**Transmittal Information**

**Filed with Court:** Court of Appeals Division III
**Appellate Court Case Number:** Case Initiation
**Trial Court Case Title:** Cole, Linda Et Al Vs Young, Eric Ross Et Al
**Trial Court Case Number:** 23-2-04734-32    (JIS Number: 23-2-04734-1)
**Trial Court County:** Spokane Superior Court
**Signing Judge:** Jacquelyn High-Edward
**Judgment Date:** 03/01/2024

**The following documents have been uploaded:**

- MDR_Other_20240410132729D3790464_4466.pdf
   This File Contains:
   Other - Response to Motion for Discretionary Review
   *The Original File Name was Appellee Response to Motion for Discretionary Review.pdf*

**A copy of the uploaded files will be sent to:**

- audrey.runcorn@painehamblen.com
- austin@hatcherlawpllc.com

**Comments:**

---

Sender Name: Michael Merritt - Email: mrm@painehamblen.com
Address:
717 W SPRAGUE AVE STE 1200
SPOKANE, WA, 99201-3905
Phone: 509-455-6000

**Note: The Filing Id is 20240410132729D3790464**

1
2
3
4
5
6
7

**IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON,**
**IN AND FOR THE COUNTY OF SPOKANE**

LINDA COLE and TED COLE,                )
                                         )   No. 23-2-04734-32
       Plaintiffs,                     )
                                         )
vs.                                      )
                                         )   **PLAINTIFFS' LAY AND EXPERT**
ERIC ROSS YOUNG and SUSANANN             )   **WITNESS DISCLOSURE**
LYNETTE YOUNG,                           )
                                         )
       Defendants.                     )

_____

      COME NOW Plaintiffs Linda Cole and Ted Cole, by and through their attorney

Michael R. Merritt and Paine Hamblen, P.S., and hereby discloses the following witnesses

pursuant to the Court's Civil Case Schedule Order:

### I. LAY WITNESSES

    1.    Linda Cole
         c/o Paine Hamblen, P.S.
         717 W Sprague Ave, Suite 1200
         Spokane, WA 99201
         (509) 455-6000

         Mrs. Cole is expected to testify concerning the factual basis for her claims.

    2.    Ted Cole
         c/o Paine Hamblen, P.S.
         717 W Sprague Ave, Suite 1200

PLAINTIFFS' LAY AND EXPERT WITNESS
DISCLOSURE - 1

*PAINE HAMBLEN, P.S.*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WASHINGTON 99201-3505
PHONE (509) 455-6000

Spokane, WA 99201
(509) 455-6000

Mr. Cole is expected to testify concerning the factual basis for his claims.

3.    Matthew Anderson, Notary Public
c/o Postal Annex
816 W. Francis Ave.
Spokane, WA 99205
(509) 328-3354

Mr. Anderson is expected to testify regarding the notarization of the Wire Instructions, Indemnification, and Hold Harmless Agreement which are the basis of Plaintiffs' claims.

4.    Joelle Severns
Associate and friend of Plaintiffs
2023 Birch St.
Baker City, OR 97814

Mrs. Severns is expected to testify concerning the subject dispute, the relationship of the parties, and the factual basis of Plaintiffs' claims.

5.    Mark Severns
Associate and friend of Plaintiffs
2023 Birch St.
Baker City, OR 97814

Mr. Severns is expected to testify concerning the subject dispute, the relationship of the parties, and the factual basis of Plaintiffs' claims.

6.    Dawn Bruce, Branch Manager
c/o Old West Federal Credit Union
3 Depot St.
La Grande, OR 97850
(888) 575-0264

DEFENDANT NATHANIEL SHOEMAKER'S
LAY AND EXPERT WITNESS DISCLOSURE - 2

*PAINE HAMBLEN, P.S.*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WASHINGTON 99201-3505
PHONE (509) 455-6000

1             Ms. Bruce is expected to testify regarding the arrangement of the wire transfers

2             at issue in this case.

3

4        7.      Christy Varner
                    c/o Old West Federal Credit Union

5                     3 Depot St.
                    La Grande, OR 97850

6                     (888) 575-0264

7             Ms. Varner is expected to testify regarding the arrangement of the wire

8             transfers at issue in this case.

9

10       8.      Tara Crader
                    c/o Old West Federal Credit Union

11                     2036 Broadway St.

12                     Baker City, OR 97814
                    (541) 523-5535

13

14             Ms. Crader is expected to testify regarding the arrangement of the wire

15             transfers at issue in this case.

16

17       9.      Brooke Wolcott
                    c/o Old West Federal Credit Union

18                     2036 Broadway St.
                    Baker City, OR 97814

19                     (541) 523-5535

20             Ms. Wolcott is expected to testify regarding the arrangement of the wire

21             transfers at issue in this case.

22

23      10.      Dawn M. Kitzmiller
                    c/o Baker City Building Department

24                     1995 Third St.
                    Baker City, OR 97814

25                     (541) 523-8219

26

27 DEFENDANT NATHANIEL SHOEMAKER'S
28 LAY AND EXPERT WITNESS DISCLOSURE - 3

Ms. Kitzmiller is expected to testify regarding the process of the Cole's house remodel/construction and Eric Young's involvement with that process.

11.  Randy DeMaris
     Designer, DeMaris Restoration & Design, LLC
     855 Foothill Dr.
     Baker City, OR 97814

Mr. Demaris is expected to testify regarding the process of the Cole's house remodel/construction and Defendants' involvement with that process.

12.  Rebecca Flaherty
     c/o John L. Scott Realty
     1500 W. 4th Ave., Suite 202
     Spokane, WA 99201

Ms. Flaherty is expected to testify regarding the purchase of real property attempted by the Defendants and the factual basis of Plaintiffs' claims.

## II.  EXPERT WITNESSES

13.  Virginia Tate
     FAI International
     P.O. Box 3821
     Coeur d'Alene, ID 83816

Ms. Tate is a forensic accountant and a certified fraud examiner. She expected to testify regarding the acquisition and disposition of the funds in dispute in this case.

## III.  RESERVATIONS

Plaintiffs' witness disclosures hereby incorporate all previously disclosed lay and expert witnesses of the other parties in this case.

DEFENDANT NATHANIEL SHOEMAKER'S
LAY AND EXPERT WITNESS DISCLOSURE - 4

*PAINE HAMBLEN, P.S.*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WASHINGTON 99201-3505
PHONE (509) 455-6000

Plaintiffs hereby expressly reserve the right not to call every witness listed. Plaintiffs also reserve the right to call all witnesses identified in any deposition taken by any party.

Plaintiffs further reserve the right to call any person having factual knowledge, whether listed as a witness or not, whether otherwise disclosed in records produced or in answers to interrogatories or documents received in production as discovery proceeds and expressly reserves the right to amend and/or supplement this disclosure of potential witnesses.

Plaintiffs expressly reserve the right to supplement or otherwise revise the foregoing Witness List in the event another party produces previously undisclosed information or witnesses.

Plaintiffs expressly reserve the right to call any and all necessary rebuttal witnesses.

DATED this 17th day of April, 2024.

**PAINE HAMBLEN, P.S.**

*/s/ Michael R. Merritt*
Michael R. Merritt, WSBA #60094
Attorney for Plaintiffs Linda and Ted Cole

DEFENDANT NATHANIEL SHOEMAKER'S
LAY AND EXPERT WITNESS DISCLOSURE - 5

*PAINE HAMBLEN, P.S.*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WASHINGTON 99201-3505
PHONE (509) 455-6000

25-80037-FPC    Doc 17-1    Filed 10/24/25    Entered 10/24/25 16:47:26    Pg 101 of 150

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 17th day of April, 2024, I caused to be served a true and correct copy of the foregoing **PLAINTIFFS' LAY AND EXPERT WITNESS DISCLOSURE** by the method indicated below and addressed to the following:

|  |  |  |
|---|---|---|
| _____ | HAND DELIVER | Austin F. Hatcher |
| X | U.S. MAIL | 11616 N. Market St. # 1090 |
| _____ | OVERNIGHT MAIL | Mead, WA 99021 |
| X | EMAIL | austin@hatcherlawpllc.com |

*/s/ Audrey Runcorn*
Audrey Runcorn, Legal Assistant

4859-4496-3767, v. 1

DEFENDANT NATHANIEL SHOEMAKER'S
LAY AND EXPERT WITNESS DISCLOSURE - 6

*PAINE HAMBLEN, P.S.*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WASHINGTON 99201-3505
PHONE (509) 455-6000

1
2
3
4
5
6
7
8  **IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON,**
   **IN AND FOR THE COUNTY OF SPOKANE**
9
10  LINDA COLE and TED COLE,       )
                                     )  No. 23-2-04734-32
            Plaintiffs,        )
11                                    )
   vs.                                )
12                                    )  **DECLARATION OF MICHAEL R.**
   ERIC ROSS YOUNG and SUSANANN       )  **MERRITT IN SUPPORT OF MOTION**
13  LYNETTE YOUNG,                    )  **TO CONTINUE TRIAL**
                                     )
14          Defendants.              )
15  _____

16      I, Michael R. Merritt, declare as follows:

17      1.      I am licensed to practice law under the laws of the state of Washington and I

18  am counsel of record for Plaintiffs in the above matter.   I make this declaration based on

19  personal knowledge.

20      2.      The trial in this matter is scheduled to commence on September 3, 2024.  I

21  have multiple trials which conflict with this trial date, including:

22

23          a.      US v. Pimms, Case No. 1:23-CR-02037-SAB with trial set for 8/26/24

24                  in US District Court, Eastern District of WA, Spokane.

25

26  DECLARATION OF MICHAEL R.                          *PAINE HAMBLEN, P.S.*
    MERRITT IN SUPPORT OF                        717 WEST SPRAGUE AVENUE, SUITE 1200
27  MOTION TO CONTINUE TRIAL                         SPOKANE, WASHINGTON 99201-3505
    - 1                                                  PHONE (509) 455-6000
28

1          b.     US v. Solis, Case No. 2:20-CR-00179-RMP set for trial on 8/26/24 in

2                 the US District Court, Eastern District of WA, Yakima.

3          3.     My current trial schedule from September to December of this year will not

4    allow for another trial setting during this time.  My current trial settings for this time period

5    are:

6

7          a.     B.R. v. State, Case No. 22-2-04258-32 set for trial on 9/16/24 in
                  Spokane County Superior Court.

8          b.     Jimenez v. Safeway, Case No. 23-2-03311-32, set for trial on 9/16/24
                  in Spokane County Superior Court.

9

10         c.     Summerfield v. Albertson's, Case No. 22-2-00026-36 set for trial on
                  10/14/24 in Walla Walla County Superior Court.

11         d.     M.B. and V.K. v. State, Case No. 22-2-01025-32, set for trial on
                  10/14/24 in Spokane County Superior Court.

12

13         e.     Thompson v. Safeway, Case No. 21-2-00822-13 set for trial on
                  11/18/24 in Grant County Superior Court.

14         f.     Nelson v. State, Case No. 23-2-10050-6 SEA, set for trial on 11/12/24
                  in King County Superior Court.

15

16         g.     US v. Bolen, Case No. 2:23-CR-00074-MKD set for trial on 12/9/24 in
                  the US District Court, Eastern District of WA, Spokane.

17         4.     Linda Cole was recently diagnosed with health problems which necessitated

18   that she undergo two surgeries in May 2024.  Mrs. Cole is still recovering from the surgeries,

19   and she has not been able to participate in discovery and will be able to do so until well after

20   the 6/28/24 discovery cut off.

21

22         5.     In addition to written discovery and the depositions of the parties, there are

23   multiple out of state witnesses who may be deposed prior to trial, including Dawn Bruce

24   (Branch Manager of Old West Federal Credit Union), Christy Varner, Brooke Wolcott and

25   Tara Crader (of Old West Federal Credit Union), Dawn Kitzmiller (of the Baker City

26   DECLARATION OF MICHAEL R.                    *PAINE HAMBLEN, P.S.*
27   MERRITT IN SUPPORT OF                        717 WEST SPRAGUE AVENUE, SUITE 1200
     MOTION TO CONTINUE TRIAL                     SPOKANE, WASHINGTON 99201-3505
28   - 2                                          PHONE (509) 455-6000

Building Dept.), and Randy Demaris (of Demaris Restoration & Design). These witnesses are based in Oregon.

6. The Motion to Continue Trial was discussed with Ted and Linda Cole and they authorized the motion to be filed.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this 3rd day of June, 2024.

MICHAEL R. MERRITT

DECLARATION OF MICHAEL R.
MERRITT IN SUPPORT OF
MOTION TO CONTINUE TRIAL
- 3

*PAINE HAMBLEN, P.S.*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WASHINGTON 99201-3505
PHONE (509) 455-6000

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 3rd day of June, 2024, I caused to be served a true and correct copy of the foregoing **DECLARATION OF MICHAEL R. MERRITT IN SUPPORT OF MOTION TO CONTINUE TRIAL** by the method indicated below and addressed to the following:

| | | |
|---|---|---|
| _____ | HAND DELIVER | Austin F. Hatcher |
| __X__ | U.S. MAIL | 11616 N. Market St. # 1090 |
| _____ | OVERNIGHT MAIL | Mead, WA 99021 |
| __X__ | EMAIL | austin@hatcherlawpllc.com |

*/s/ Audrey Runcorn*
Audrey Runcorn, Legal Assistant

4859-4496-3767, v. 1

DECLARATION OF MICHAEL R.
MERRITT IN SUPPORT OF
MOTION TO CONTINUE TRIAL
- 4

*PAINE HAMBLEN, P.S.*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WASHINGTON 99201-3505
PHONE (509) 455-6000

25-80037-FPC    Doc 17-1    Filed 10/24/25    Entered 10/24/25 16:47:26    Pg 106 of 150

**IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON,
IN AND FOR THE COUNTY OF SPOKANE**

| | |
|---|---|
| LINDA COLE and TED COLE, ) | No. 23-2-04734-32 |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | **MOTION TO CONTINUE TRIAL** |
| ) | |
| ERIC ROSS YOUNG and SUSANANN ) | |
| LYNETTE YOUNG, ) | |
| ) | |
| Defendants. ) | |

Plaintiffs, Ted and Linda Cole, by and through their attorney of record, Michael R. Merritt of Paine Hamblen, P.S., hereby submits their Motion to Continue Trial.

This Motion is made and based on LCR 40, the memorandum of points and authorities included herein, the papers and pleadings on file in this case and the arguments of counsel if this matter should be heard.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     STATEMENT OF FACTS**

This matter is scheduled to be tried on September 3, 2024.  There are several reasons why there is good cause to continue the trial in this matter.  First, the Court originally set the trial in this case due to the urgency of the determination of the ownership of $362,012.66 in

MOTION TO CONTINUE TRIAL - 1

disputed funds that still were potentially available to be returned to Plaintiff. Since the time the trial was set, it has been determined by the Court through multiple contempt hearings, that Defendants returned $119,698.04 of the funds and spent the remaining $242,314.62 in violation of the Court's injunctions and restraining orders. As such, the urgency to bring this matter to trial in a short period of time no longer exists.

Moreover, the parties used the majority of their discovery time available according to the Court's scheduling order, in moving for and obtaining an injunction, motion practice related to the Court's contempt finding against Defendants, and Defendants appeal of the Court's orders regarding these subjects. Additionally, counsel for Plaintiff has a conflict regarding two other trials in federal court which are expected to proceed at the same time as the currently scheduled trial.[1] *See Declaration of Michael R. Merritt*. Further, Linda Cole has recently experienced a serious health problem, which entailed two surgeries that occurred in the month of May 2024. *See Declaration of Michael R. Merritt*. The surgeries did not allow Plaintiffs to provide timely answers to Defendants written discovery. *See Declaration of Michael R. Merritt*. The recovery from the surgeries will delay the depositions of the Plaintiffs beyond the discovery cut off set for the end of June 2024. Finally, there are several out of state witnesses which may need to be deposed prior to trial, and this work has not been accomplished yet.[2] *See Declaration of Michael R. Merritt*.

---

[1] US v. Pimms, Case No. 1:23-CR-02037-SAB with trial set for 8/26/24 in US District Court, Eastern District of WA, Spokane; US v. Solis, Case No. 2:20-CR-00179-RMP set for trial on 8/26/24 in the US District Court, Eastern District of WA, Yakima.
[2] Dawn Bruce-Branch Manager of Old West Federal Credit Union, Christy Varner, Brooke Wolcott and Tara Crader of Old West Federal Credit Union, Dawn Kitzmiller of the Baker City Building Dept., and Randy Demaris of Demaris Restoration & Design.

MOTION TO CONTINUE TRIAL - 2

*PAINE HAMBLEN, P.S.*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WASHINGTON 99201-3505
PHONE (509) 455-6000

1    In addition, Plaintiffs ask that the trial be continued to a date no earlier than January

2  2025 as the undersigned counsel has multiple cases set for trial in September[3], October[4],

3  November[5] and December.[6]  *See Declaration of Michael R. Merritt.*

4      Plaintiffs support the filing of this motion.  *See Declaration of Michael R. Merritt.*

5

6  **II.    LEGAL ARGUMENT**

7      LCR 40(e)(1) provides:

8      "All continuances will be considered only upon written motion, for unforeseeable
   emergencies, for good cause shown, and upon terms the court deems just."

9

10      As stated above, the parties used much of their discovery time litigating contempt

11  issues to address Defendants' failure to comply with Court's injunction, and other orders

12  related to financial disclosures Defendant were required by the Court to make in this case.

13  Defendants then appealed those Court orders, thereby, eating up 2-3 more weeks of time.

14  Additionally, in May 2024, Linda Cole was required to undergo two surgeries and was able to

15  participate in discovery and her recovery from those surgeries will keep her from participating

16  in discovery until well after the current discovery cut off.  This and the fact that there are

17  multiple out of state witnesses whose testimony still has to be arranged means there is

18  currently not enough discovery time left to prepare for trial.  Further, Plaintiff's counsel has

19

20  multiple trial settings in August, September, October, November and December making it

21

22  ---
   [3] B.R. v. State, Case No. 22-2-04258-32 set for trial on 9/16/24 in Spokane County Superior
23  Court; Jimenez v. Safeway, Case No. 23-2-03311-32, set for trial on 9/16/24 in Spokane
   County Superior Court.
24  [4] Summerfield v. Albertson's, Case No. 22-2-00026-36 set for trial on 10/14/24 in Walla
   Walla County Superior Court; M.B. and V.K. v. State, Case No. 22-2-01025-32, set for trial
25  on 10/14/24 in Spokane County Superior Court.
   [5] Thompson v. Safeway, Case No. 21-2-00822-13 set for trial on 11/18/24 in Grant County
26  Superior Court; Nelson v. State, Case No. 23-2-10050-6 SEA, set for trial on 11/12/24 in
   King County Superior Court.
27  [6] US v. Bolen, Case No. 2:23-CR-00074-MKD set for trial on 12/9/24 in the US District
   Court, Eastern District of WA, Spokane.
28  MOTION TO CONTINUE TRIAL - 3

1   impossible to proceed with the trial as scheduled, and supporting a setting of the trial in

2   January 2025.

3   **III.**     **CONCLUSION**

4          There is clearly good cause, pursuant to LCR 40(e)(1) for the continuance of the trial

5   in this case.  Plaintiff's seek an order from the this Court setting a new trial date for this case

6   in January 2025.

7          DATED this 3rd day of June, 2024.

8

9                                           **PAINE HAMBLEN, P.S.**

10

11                                          Michael R. Merritt, WSBA #60094
                                            Attorney for Plaintiffs Linda and Ted Cole
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   MOTION TO CONTINUE TRIAL - 4

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 3rd day of June, 2024, I caused to be served a true and correct copy of the foregoing **MOTION TO CONTINUE TRIAL** by the method indicated below and addressed to the following:

| | |
|---|---|
| _____ HAND DELIVER | Austin F. Hatcher |
| __X__ U.S. MAIL | 11616 N. Market St. # 1090 |
| _____ OVERNIGHT MAIL | Mead, WA 99021 |
| __X__ EMAIL | austin@hatcherlawpllc.com |

*/s/ Audrey Runcorn*
Audrey Runcorn, Legal Assistant

4859-4496-3767, v. 1

MOTION TO CONTINUE TRIAL - 5

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF SPOKANE**

| | |
|---|---|
| LINDA COLE and TED COLE, | ) |
| | ) No. 23-2-04734-32 |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) **NOTE FOR HEARING** |
| ERIC ROSS YOUNG and SUSANANN | ) |
| LYNETTE YOUNG, | ) |
| | ) |
| Defendants. | ) |

**TO:  CLERK OF THE COURT AND COUNSEL OF RECORD**

PLEASE TAKE NOTICE that this case will be set for hearing in Spokane County Superior Court, before Hon. Jacquelyn High-Edward at the request of Plaintiffs:

DATE:  July 12, 2024

TIME:  10:00 a.m.

MOTION:  Plaintiffs' Motion to Continue Trial

DATED this 3rd day of June, 2024.

PAINE HAMBLEN P.S.

By: */s/ Michael R. Merritt*

Michael R. Merritt, WSBA #60094
Attorney for Plaintiffs

NOTE FOR HEARING- 1

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 3rd day of June 2024, I caused to be served a true and correct copy of the foregoing **NOTE FOR HEARING** by the method indicated below and addressed to the following:

```
_____  U.S. MAIL                 Austin F. Hatcher
_____  HAND DELIVERED            11616 N. Market St. # 1090
_____  OVERNIGHT MAIL            Mead, WA 99021
_X___  EMAIL                     austin@hatcherlawpllc.com
```

_/s/ Audrey Runcorn_
Audrey Runcorn, Legal Assistant

NOTE FOR HEARING - 2

**SUPERIOR COURT OF WASHINGTON**
**IN AND FOR SPOKANE COUNTY**

Linda Cole and Ted Cole,

        Plaintiffs,

v.

Eric Ross Young and Susanann Lynette
Young,

        Defendants.

No. 23-2-04734-32

**DEFENDANTS' FIRST SET OF
INTERROGATORIES AND REQUESTS
FOR PRODUCTION OF DOCUMENTS
AND RESPONSES THERETO**

TO:    Linda Cole and Ted Cole, 625 Broadway St., Baker City, OR 97814

AND:  Michael R. Merritt, counsel of record for Plaintiffs, 717 W. Sprague Ave., Suite 1200,

       Spokane, WA 99201

## I.    INTRODUCTION

In accordance with Superior Court Civil Rules (CR) 26, 33, and 34, please answer the

following interrogatories and requests for production of documents, electronically stored

information, and tangible things, separately and fully under oath, within thirty (30) days of the

date of service and in accordance with the DEFINITIONS and INSTRUCTIONS set forth

below. Documents are to be produced electronically via email pursuant to the electronic service

agreement between the parties, or for inspection and copying by mail to: Hatcher Law, PLLC,

DEFENDANTS' FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION OF
DOCUMENTS - PAGE 1 OF 18

Hatcher Law, PLLC
11616 N. Market St., #1090
Mead, WA 99021

1   11616 N. Market St. #1090, Mead Washington 99021, with instructions specifying whether you
2   wish them to be copied and returned or to be retained.

## II.   DEFINITIONS

4   For the purposes of these Requests, the following definitions apply:

5   1.   "You" (or "your") or "plaintiff" refers to Linda and Ted Cole, their agents,
6   employees, investigators, experts, insurers, attorneys, entities under their control, or other
7   representatives, and their attorneys' agents, employees, and investigators.  When "you" (or
8   "your" or "plaintiff") is used in an Interrogatory or Request for Production, or a part thereof, it
9   is intended that the answer to the Interrogatory or Request for Production, or part thereof, is to
10  include all information known to plaintiffs, their agents, employees, investigators, experts,
11  insurers, attorneys, guardian ad litem, entities under their control, or other representatives, and
12  their attorneys' agents, employees, and investigators.

13  2.   "Document" means any written, recorded, or other graphic matter, electronic or
14  not, however produced or reproduced.  It should be understood to have the broadest possible
15  meaning consistent with the Civil Rules and includes all matter that relates or refers in whole or
16  in part to the subjects referred to in an interrogatory or a request for production.  If a document
17  has been prepared in several copies, or if additional copies have been made, and the copies are
18  not identical, or have undergone alteration, each non-identical copy is a separate "document."
19  This definition includes, but is not limited to, the following: any paper, writing, chart, memo,
20  note, letter, inter-office memo, intra-office memo, email, report, study, statement, map, log
21  entry, drawing, photograph, sketch, picture, tape recording, any other verbal or pictorial

22

23  DEFENDANTS' FIRST SET OF INTERROGATORIES
    AND REQUESTS FOR PRODUCTION OF
    DOCUMENTS - PAGE **2** OF **18**

Hatcher Law, PLLC
11616 N. Market St., #1090
Mead, WA 99021

25-80037-FPC   Doc 17-1   Filed 10/24/25   Entered 10/24/25 16:47:26   Pg 115 of 150

1   representation of any event or idea that has transpired, whether meant for communication to

2   others or for personal need.

3        3.     "Person" means any public or private entity or natural person, including any

4   individual, firm, partnership, joint venture, corporation, association, company, foundation, or

5   business enterprise.

6        4.     "Financial Institution" means, without limitation, state-chartered commercial

7   banks, stock savings banks, mutual savings banks, alien banks, savings and loan associations,

8   credit unions, and independent trust companies.

9        5.     "Identity" and "identify," when used with reference to a person, requires stating

10  the person's full name or business name and their present home and business address and

11  telephone numbers.  "Identity" and "identify," when used with reference to documents, requires

12  stating specifically (a) the type of document involved (e.g., "email," "inter-office

13  memorandum," etc.), together with information sufficient to enable defendants to identify the

14  document, such as its date; (b) the name(s) of the author, any recipient(s), and any signer(s); (c)

15  the title or heading of the document and its approximate number of pages; and (d) the identity of

16  the person last known to have possession of the document, together with the present or last

17  known location of the document.

18       6.     "Related to" means pertinent, relevant or material to, evidencing, having a

19  bearing on, or concerning, affecting, discussing, dealing with, considering, or otherwise relating

20  to in any manner whatsoever, the subject matter of inquiry.

21

22

23  DEFENDANTS' FIRST SET OF INTERROGATORIES
    AND REQUESTS FOR PRODUCTION OF
    DOCUMENTS - PAGE 3 OF 18

Hatcher Law, PLLC
11616 N. Market St., #1090
Mead, WA 99021

1                                           **III.     INSTRUCTIONS**

2        1.      Pursuant to Civil Rules 33 and 34, if you object, the grounds for each objection

3 must be stated.

4        2.      No specific Interrogatory or Request for Production should be construed to limit

5 the scope of any other Interrogatory or Request for Production, or of any term defined above,

6 and no subpart of any Interrogatory or Request for Production should be construed to limit the

7 scope of any other subpart of such Interrogatory or Request for Production.

8        3.      When an answer or response contains both privileged and non-privileged

9 material, the non-privileged material must be disclosed to the fullest extent possible without

10 thereby disclosing the privileged material.  If a privilege is asserted with regard to part of an

11 answer or response, the party claiming the privilege must clearly indicate the portions as to

12 which the privilege is claimed.  When an answer or response that includes documents has been

13 redacted or altered in any fashion, you must identify as to each document the reason(s) for the

14 redaction or alteration, the date of the redaction or alteration, and the person performing the

15 redaction or alteration.  Any redaction must be clearly visible on the redacted document.

16        4.      If you object to or otherwise decline to respond to any portion of an Interrogatory

17 or Request for Production, please provide all information called for by that portion of the

18 Interrogatory or Request for Production to which you do not object or to which you do not

19 decline to respond.  For those portions of an Interrogatory or Request for Production to which

20 you object or otherwise refuse to provide an answer or response, please state the reason(s) for

21 such objection or refusal, and state whether you are refusing to provide an answer or response.

22

23 DEFENDANTS' FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION OF
DOCUMENTS - PAGE 4 OF 18

Hatcher Law, PLLC
11616 N. Market St., #1090
Mead, WA 99021

5.    It is intended that these Interrogatories and Requests for Production will not solicit any material protected either by the attorney-client privilege or by the work-product doctrine that was created by, or developed by, your counsel after the date on which this litigation was commenced, and they should be construed accordingly.

6.    If an answer or response to any Interrogatory or Request for Production is objected to on the grounds that the Interrogatory or Request for Production is unduly burdensome, please describe the burden or expense associated with answering or responding.

7.    Notwithstanding any definition set forth above, each word, term, or phrase used in these interrogatories is intended to have the broadest meaning permitted under the Civil Rules.

## IV.    INTERROGATORIES

**INTERROGATORY NO. 1:** Identify all Persons involved in responding to these Interrogatories and Requests for Production, including identification of each Interrogatory or Request that each Person provided information for or answered.

**ANSWER:**

Linda and Ted Cole and their attorney Michael Merritt


**INTERROGATORY NO. 2:** Have you been a party to any lawsuits, including bankruptcy and/or divorce proceedings, in the past? If so, please provide:

(a) A description of the nature of the lawsuit;

(b) The names of parties (or case name);

(c) The court and cause number;

DEFENDANTS' FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION OF
DOCUMENTS - PAGE **5** OF **18**

Hatcher Law, PLLC
11616 N. Market St., #1090
Mead, WA 99021

1      (d) The name of the attorney representing you;

2      (e) The name of any insurance company involved; and

3      (f) The outcome of the lawsuit, including any judgments against you and the amount

4        thereof.

5      **ANSWER:**

6      Objection. This interrogatory seeks information irrelevant to this case and is not

7 reasonably calculated to lead to the discovery of admissible evidence in this case.

8      **INTERROGATORY NO. 3:** Did you file any loan applications during the years 2020,

9 2021, 2022, and 2023? If so, please provide the identity of the lender, the amount sought, and

10 final disposition of the loan application.

11      **ANSWER:**

12      Objection. This interrogatory seeks information irrelevant to this case and is not

13 reasonably calculated to lead to the discovery of admissible evidence in this case.

14      **INTERROGATORY NO. 4:** Did you obtain pre-approval for a home loan during the

15 years 2020, 2021, 2022, and 2023? If so, please provide the identity of the lender and final

16 disposition of the pre-approval application.

17      **ANSWER:**

18      Objection. This interrogatory seeks information irrelevant to this case and is not

19 reasonably calculated to lead to the discovery of admissible evidence in this case.

20      **INTERROGATORY NO. 5:** Identify each financial institution in which you hold an

21 account.

22

23
DEFENDANTS' FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION OF
DOCUMENTS - PAGE **6** OF 18

Hatcher Law, PLLC
11616 N. Market St., #1090
Mead. WA 99021

1  <u>**ANSWER:**</u>

2  Objection. This interrogatory seeks information irrelevant to this case and is not

3  reasonably calculated to lead to the discovery of admissible evidence in this case.

4  <u>**INTERROGATORY NO. 6:**</u> Identify the dog mentioned in the Supplemental

5  Declaration of Linda Cole, sub number 11.0, dated November 9, 2023. By way of

6  identification, please provide:

7  (a) Collar Tag identifier;

8  (b) Microchip identifier;

9  (c) American Kennel Club ("AKC") Registration Number;

10  (d) Primary Contact listed with AKC;

11  (e) Alternate Contact listed with AKC;

12  (f) Veterinary practice to which the dog has been taken;

13  (g) Any other identifier;

14  (h) Bill of Sale or other ownership paperwork, or any document evincing ownership.

15  <u>**ANSWER:**</u>

16  The AKC registration for the dog names her Lady Adorable. She is a red sable

17  Pomeranian. She has an AKC registration number, a license number and she has been

18  microchipped. All this was done and paid for by Linda and Ted Cole. The dog has been taken

19  to Animal Clinic of Baker, Inc. located on 2490 Tenth St., Baker City, Oregon for all

20  vaccinations, and was also taken to Garland Animal Clinic for other treatment. All such

21  treatment was paid for by Linda and Ted Cole. A Canine Health Record provided by the

22  breeder identifies Linda & Ted Cole as the owner of the dog.

23  
DEFENDANTS' FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION OF
DOCUMENTS - PAGE 7 OF 18

Hatcher Law. PLLC
11616 N. Market St., #1090
Mead, WA 99021

1    Plaintiff will not provide any of the license or registration numbers for the dog as

2  Defendants have attempted numerous times by contacting the AKC to steal the registration of

3  the dog and were thwarted in their attempt because they needed the registration number and the

4  other identifying information to do so.

5    **INTERROGATORY NO. 7:** List each firearm that you own.  For each listed firearm,

6  specify its manufacturer, model, serial number, and means in which it was acquired.

7    **ANSWER:**

8    The information is irrelevant as the firearms Defendants removed from Plaintiff's

9  without permission have been returned.

10    **INTERROGATORY NO. 8:** List all personal property you allege has been converted

11  by Defendants.

12    **ANSWER:**

13    1) Home Decor items purchased at the At Home store in Spokane $650.09.  34 Items,

14  brand new & unbroken or opened. Things missing from stuff that was not brand new in the

15  storage unit. 1 Rug gripper tape 2.5x25, 1 Wooden Bowl, 1 Pug 12x12 picture, 3 Habitat gold

16  sphere wall decoration set (1 big, 2 smaller).

17    2) Superchip Flashpaq handheld tuner for GM Yukon (Eric also owns a Yukon like the

18  Cole's)

19    3) Basketball Hoop (Eric took to Spokane & set up the hoop without permission so he &

20  his son could play it was not for them)

21    4) All paperwork remaining in Eric's possession regarding the house remodeling

22  construction, including JM Precision's contract Jose gave to him that he never returned to him.

23  DEFENDANTS' FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION OF
DOCUMENTS - PAGE **8** OF **18**

Hatcher Law, PLLC
11616 N. Market St., #1090
Mead. WA 99021

1      5) Chutney matching dish set (that was originally in unopened Amazon boxes), red with

2   fruit on the side. Matching bakeware, glassware.

3      6) 7 Clear totes with white lids 64 quart

4      7) 2 solid black collapsing crates

5      8) 1 black with red trim collapsing crate

6      9) Professional peanut hair clipper

7      10) National Park Senior Pass Missing from Ted's 2021 Truck

8      11) Key Fob for 2021 Ford Truck or money to replace it

9      12) Electric cutting knife

10     13) Medication: Linda's, Anastrozole 1 mg tablets, Furosemide 20 mg tablets Delivered

11  to the Young's address 11/11/23 Ted's Ropinrole 1 mg tablets, Losartan 100 mg tablets.

12  Delivered to the Young's 11/1/23. Albuterol HFA 90 mca/act inhaler 14 boxes for both Ted &

13  Linda missing from the medicine cabinet in bedroom.

14     14) Air Optics Alcon Contacts 3 full boxes missing from Linda's suitcase

15     15) Lady the Pomeranian puppy along with the dog supplies Linda bought & paid for.

16  Shampoo & conditioner, dog grooming rake/comb, dog harness, dog leash, double dinner bowl,

17  collar accessory vest/harness, 3 dog sweaters, smart bell, reusable dog diaper wraps, collapsible

18  pet bowls, pet carrier, cat toy.

19     16) Enlope white battery charger

20     17) 2 Load Locks

21     18) 1900 Story & Clark Piano wheel & circular support wood with casters that went with

22  it.

23  DEFENDANTS' FIRST SET OF INTERROGATORIES
    AND REQUESTS FOR PRODUCTION OF
    DOCUMENTS - PAGE 9 OF 18

Hatcher Law, PLLC
11616 N. Market St., #1090
Mead, WA 99021

1      19) Badland ZXR 3500 lb. ATV/Powersport 12V Winch with Wire Rope

2      **INTERROGATORY NO. 9:** Identify each piece of evidence that you intend to rely on

3      at trial or that you intend to submit in support of any dispositive motion in this matter.

4      **ANSWER:**

5      Objection. This interrogatory is overbroad and vague and seeks work product protected

6      information. Further, it is not possible at this time to identify all evidence that will be presented

7      at the time of trial or that may be used in support of a dispositive motion.

8      **INTERROGATORY NO. 10:** For the expert disclosed in Plaintiffs' Lay and Expert

9      Witness Disclosure dated April 17, 2024, namely Virginia Tate, but also any other experts

10     Plaintiffs intend to disclose, please provide:

11         (a) The substance of the facts and opinions in which the expert is expected to testify;

12         (b) A summary of the grounds for each opinion;

13         (c) The sources of information the expert considered in forming their opinion;

14         (d) Any exhibits to be used as a summary of, or as support for, the expert's opinions;

15         (e) The qualifications of the expert;

16         (f) All published books, papers, or articles the expert has written, alone or jointly,

17             within the last ten years;

18         (g) All legal matters in which the expert has offered opinions within the last ten years;

19             and

20         (h) The compensation to be paid to the expert.

21

22     **ANSWER:**

23

Hatcher Law, PLLC
11616 N. Market St., #1090
Mead, WA 99021

1         The information requested with respect to Virginia Tate is included in her multiple

2 reports disclosed to the court in this case and produced with these interrogatories.  Plaintiffs

3 have no other expert retained at this time.

4         **INTERROGATORY NO. 11:**  Identify each and every agency, administrative body,

5 governmental entity, or business with whom you have communicated regarding the subject

6 matter of this lawsuit.

7         **ANSWER:**

8         Objection.  This interrogatory seeks information irrelevant to this case and is not

9 reasonably calculated to lead to the discovery of admissible evidence in this case.

10         **INTERROGATORY NO. 12:**  For each lay witness disclosed in Plaintiffs' Lay and

11 Expert Witness Disclosure dated April 17, 2024, please provide:

12         (a) The relevant facts that you understand to be within the knowledge of each such

13             witness;

14         (b) The subject matter of the testimony expected to be elicited from such witness; and

15         (c) The substance of the testimony to be elicited from such witness.

16         **ANSWER:**

17         See description of testimony for each witness in the disclosure.  Plaintiffs do not have

18 any further specifics on the scope of the knowledge of the disclosed individuals at this time

19 except for the following:

20         Ted and Linda Cole are expected to testify regarding the allegations made in the verified

21 complaint.

22

23

DEFENDANTS' FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION OF
DOCUMENTS - PAGE 11 OF 18

Hatcher Law, PLLC
11616 N. Market St., #1090
Mead, WA 99021

1    Matthew Anderson is expected to testify regarding the manner in which the partial wire

2    transfer documents were signed by Linda Cole.

3    Joelle and Mark Severns are expected to testify regarding the allegations in the verified

4    complaint that are within their personal knowledge.

5    Dawn Bruce is expected to testify regarding her conversations with Linda Cole, Eric

6    Young, and Susanann Young arranging the wire transfers.

7    Christy Varner, Tara Crader, and Brook Wolcott will testify regarding the wire transfers.

8    Dawn Kiztmiller will testify to the efforts made by Eric Young to obstruct and derail the

9    remodel of the Cole's Baker City home.

10    Randy DeMaris will testify to the same subject matter as Dawn Kitzmiller.

11    Rebecca Flaherty will testify regarding the home purchase the Defendants attempted

12    with the money they stole from the Plaintiffs, and the representations the Defendants made

13    during this process about the money they had for the purchase, the fraudulent gift letter they

14    had, and any representation they made regarding agreements they had to did not have with the

15    Coles.

16                    V.    **REQUESTS FOR PRODUCTION**

17    **REQUEST FOR PRODUCTION NO. 1:** Produce all documents identified in your

18    response to Interrogatories No. 11 and 12.

19    **RESPONSE:**

20    Objection. This request seeks information irrelevant to this case and is not reasonably

21    calculated to lead to the discovery of admissible evidence in this case with respect to

22    Interrogatory 11. Also, no documents were identified in either interrogatory response.

23    DEFENDANTS' FIRST SET OF INTERROGATORIES
      AND REQUESTS FOR PRODUCTION OF                         Hatcher Law, PLLC
      DOCUMENTS - PAGE **12** OF **18**                      11616 N. Market St., #1090
                                                             Mead, WA 99021

1       **REQUEST FOR PRODUCTION NO. 2:** For each expert witness identified in

2 response to Interrogatory No. 10, produce:

3       (a) Each expert's retainer agreement;

4       (b) Each expert's curriculum vitae;

5       (c) Reports produced for Plaintiffs;

6       (d) Documents, records, and reference materials which will be utilized by the expert in

7           formulating opinions to support the claims in the Verified Complaint;

8       (e) All correspondence between you and the expert;

9       (f) All billing statements, invoices, and other documents evidencing the hours worked

10           and the amounts billed by the expert;

11       (g) Copies of reports, deposition transcripts, and trial testimony transcripts concerning

12           the expert's opinions in any case in the last ten years in which the expert gave

13           opinions regarding allegedly fraudulent transactions or transfers; and

14       (h) Copies of any amicus briefs authored in whole or in part by the expert regarding

15           fraudulent transactions or transfers.

16       **RESPONSE:**

17       See FAI Reports with Ms. Tate's CV attached that Defendants already have in their

18 possession.

19       All account records and information relied upon for Ms. Tate's opinions are listed in the

20 reports and are already in the possession of Plaintiffs.

21       **REQUEST FOR PRODUCTION NO. 3:** Produce all documents identified in your

22 response to Interrogatory No. 9.

23 DEFENDANTS' FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION OF
DOCUMENTS - PAGE 13 OF 18

1    **RESPONSE:**

2         Objection.  This request is overbroad and vague and seeks work product protected

3    information, and it is not possible at this time to identify all evidence that will be presented at

4    the time of trial or that may be used in support of a dispositive motion.

5         **REQUEST FOR PRODUCTION NO. 4:**  Produce all documents identified in your

6    response to Interrogatory No. 8 which evince ownership of such items.

7         **RESPONSE:**

8         Objection.  This request is overbroad and impracticable as Defendants essentially have

9    stolen a house full of items under the pretext of helping Plaintiff's move to Spokane from Baker

10   City.  In the alternative, Plaintiffs have provided a list of missing items that Defendants have

11   taken, Defendants should produce a receipt for each of those items to prove their ownership if

12   they claim they own the items.  Additionally, some of these documents are believed to have

13   been removed from the Cole household by Defendants.  Notwithstanding the objection, See

14   attached receipts attached as **Exhibit 1**.

15        **REQUEST FOR PRODUCTION NO. 5:**  Produce all documents identified in your

16   response to Interrogatory No. 7 which evince ownership of such items.

17        **RESPONSE:**

18        Objection.  The information requested is irrelevant as the firearms Defendants removed

19   from Plaintiff's possession without permission have been returned.

20        **REQUEST FOR PRODUCTION NO. 6:**  Produce all documents identified in your

21   response to Interrogatory No. 6.

22

23   DEFENDANTS' FIRST SET OF INTERROGATORIES
     AND REQUESTS FOR PRODUCTION OF
     DOCUMENTS - PAGE 14 OF 18

     Hatcher Law, PLLC
     11616 N. Market St., #1090
     Mead, WA 99021

1     **RESPONSE:**

2       See attached registration, canine health record, veterinary invoices, purchase records and

3 evidence of payment as **Exhibit 2**.

4     **REQUEST FOR PRODUCTION NO. 7:** Produce all documents identified in your

5 response to Interrogatory No. 3-5.

6     **RESPONSE:**

7       Objection. This request seeks information irrelevant to this case and is not reasonably

8 calculated to lead to the discovery of admissible evidence in this case.

9     **REQUEST FOR PRODUCTION NO. 8:** Produce all documents identified in your

10 response to Interrogatory No. 2.

11     **RESPONSE:**

12       Objection. This request seeks information irrelevant to this case and is not reasonably

13 calculated to lead to the discovery of admissible evidence in this case.

14       Dated this 26th day of April, 2024.

15

16                         */s/ Austin F. Hatcher*
                        Austin F. Hatcher, WSBA No. 57449

17                         Attorney for Defendants

18

19

20

21

22

23 DEFENDANTS' FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION OF
DOCUMENTS - PAGE **15** OF **18**

                                        Hatcher Law, PLLC
                                11616 N. Market St., #1090
                                  Mead, WA 99021

1

## DECLARATION OF RESPONDING PARTY

2     I declare under the penalty of perjury under the laws of the state of Washington that I am

3  a Defendant in this action and am authorized to make the foregoing answers.  I declare that I

   have read the foregoing answers, know the contents thereof, and believe them to be true and
4
   correct.
5

6     Dated this _13_ day of _JUNE_, 2024 at _Baker City OREGON_ .

7

8           _Linda J. Cole_
9           Signature

            _LINDA J. COLE_
10          Printed Name

11

12

13

14

15

16

17

18

19

20

21

22

23  DEFENDANTS' FIRST SET OF INTERROGATORIES
    AND REQUESTS FOR PRODUCTION OF
    DOCUMENTS - PAGE 16 OF 18

Hatcher Law, PLLC
11616 N. Market St., #1090
Mead, WA 99021

1

**CERTIFICATION**

2     The undersigned attorney for Plaintiffs has read the foregoing responses to Defendants'

3 First Set of Interrogatories and Requests for Production of Documents, and they are in

4 compliance with Civil Rule 26(g).

5     DATED this 17th day of June, 2024.

6                                    **PAINE HAMBLEN, P.S.**

7                                     /s/  *Michael R. Merritt*
                                      Michael R. Merritt, WSBA #60094
8                                     Attorney for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
DEFENDANTS' FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION OF                    Hatcher Law, PLLC
DOCUMENTS - PAGE 17 OF 18                    11616 N. Market St., #1090
                                                   Mead, WA 99021

1

## CERTIFICATE OF SERVICE

2      I certify that I electronically served a copy of this document on all parties on the date

3   below as follows:

4          Austin Hatcher                    [ X ] U.S. Mail
           11616 N. Market St. # 1090        [ X ] E-mail
5          Mead, WA 99021
           austin@hatcherlawpllc.com

6

7          Eric & Susanann Young             [ X ] U.S. Mail
           8501 N. Sylvia St.                [ X ] E-mail
8          Spokane, WA 99208
           e-young-encrypt@pm.me
9          jaeeersmum@gmail.com

10

11      I certify under penalty of perjury under the laws of the state of Washington that the

12   foregoing is true and correct.

13      DATED this 17th day of June, 2024, at Spokane, WA.

14

15                                   **PAINE HAMBLEN, P.S.**

16                                   */s/ Michael R. Merritt*

17                                   Michael R. Merritt
                                     717 W. Sprague Ave., Suite 1200
18                                   Spokane, WA 99201

19

20   4853-9399-6993, v. 1

21

22

23   DEFENDANTS' FIRST SET OF INTERROGATORIES            Hatcher Law, PLLC
     AND REQUESTS FOR PRODUCTION OF                      11616 N. Market St., #1090
     DOCUMENTS - PAGE **18** OF **18**                   Mead, WA 99021

# Exhibit #1

carandtruckremotes.com
1405 Old Alabama Rd
Ste 200
Roswell, GA 30076
support@carandtruckremotes.com
www.carandtruckremotes.com



**Invoice for Order# 951761**

| Date: | 11/02/2023 | | Order # | 951761 |



| Ship to: | Linda Cole | | Bill To: | Linda Cole |
| | 625 Broadway St | | | 625 Broadway St |
| | Baker City OR 97814 | | | Baker City OR 97814 |
| | US United States | | | US United States |
| | 6618001895 | | | 6618001895 |
| **Amount:** | $211.08 | | **E-Mail:** | ljc4444@yahoo.com |
| **Paid:** | Yes | | **Payment:** | Visa |
| **Ship Via:** | First-Class Mail (4-5 days) | | **Comments:** | |

| | Name | Code | QOH | BIN | Qty | Unit Price | Options | B/O |
|---|------|------|-----|-----|-----|------------|---------|-----|
| ☐ |  2021 Ford F-350, F-450, F-550 Remote Key Fob w/ Engine Start - Refurbished | FRD-164-R8134-REF | 21 | 1464 | 2 | $79.95 | Warranty Id = 94133 | |
| ☐ | Product Warranty | warranty | | | 2 | $23.99 | Warranty Id = 94133<br>warranty = A0-ELCTR-3Y<br>Term = 36 Months<br>Warranty Item = 2021 Ford F-350, F-450, F-550 Remote Key Fob w/ Engine Start - Refurbished<br>item = 2021-Ford-F-350-remote-start-flip-key-refurbished<br>itemid = 2021-ford-f-350-remote-start-flip-key-refurbished<br>warrantycost = (+$23.98) | |
| ☐ | Shipping Protection | shipping-protection | | | 1 | $3.20 | protection-cost = (+$3.2)<br>protection-id = 0cccfc22-9378-440b-8cac-6dc35c3tb491 | |

| | |
|---|---|
| Subtotal | $211.08 |
| Shipping | $0.00 |
| Tax | $0.00 |
| Total | $211.08 |

Thank you for your order! If you have any questions about your order please email us at support@carandtruckremotes.com

**Live Chat Available 7 Days a week at www.CarAndTruckRemotes.com**

# Baker Vision Clinic

**Baker Vision Clinic**
Drs. Elms, Mitchell & Blankenship
2150 Third Street
Baker City, OR 97814
541-523-5858

# RECEIPT

Ms. Linda Cole
625 Broadway
Baker City, OR 97814
Account #:  31302

Patient List: (B)  Cole, Ted L
(A)  Cole, Linda J

| DATE | FAMILY ID | DESCRIPTION | CHARGE | ADJUST | INS PAID | INS BAL | PATIENT PAID | PATIENT BALANCE |
|------|-----------|-------------|--------|--------|----------|---------|--------------|-----------------|
| 08/23/2022 | A | Air Optix Hydra 4 - 6 Pks | 239.80 | 0.00 | 0.00 | 0.00 | 239.80 | 0.00 |
| 08/29/22 | | Pmt - Credit Card | | 0.00 | 0.00 | | 239.80 | |
| 12/02/2022 | B | Est E & M Level 4 | 235.00 | 110.66 | 124.34 | 0.00 | 0.00 | 0.00 |
| 12/20/22 | | Medicare Pymt | | 0.00 | 99.40 | | 0.00 | |
| | | Note: CO  45, CO  253, CO, | | | | | | |
| 12/20/22 | | Medicare Pymt | | -1.66 | 0.00 | | 0.00 | |

25-80037-FPC     Doc 17-1     Filed 10/24/25     Entered 10/24/25 16:47:26     Pg 134 of 150



 Duracell 395/399 1.5V Silver Oxide Button Battery, 3 Pack
Return window closed on Sep 30, 2023

Buy it again

Get product support  >

 Mighty Paw Smart Bell 2.0 Dog Doorbells for Potty Training |
Wireless Electronic Dog Bell for Door Potty Training. Pet
Communication Potty Bells for Dogs. Light Press Button Dog Bell
(2 Activator)
Return window closed on Sep 27, 2023

Buy it again

 Bostitch Office Twist-n-Sharp Pencil Sharpener, for Kids & Colored
Pencils, Assorted Colors (PS1-ADJ)
Return window closed on Sep 27, 2023

Buy it again

 Teamoy 4pcs Washable Female Dog Diapers, Reusable Doggie
Diaper Wraps for Female Dogs, Super-Absorbent and Comfortable,
XS
Return window closed on Sep 27, 2023

Buy it again

 Covergirl Perfect Point Plus Charcoal Color Eyeliner Pencil, 0.008
Ounce (Pack of 2)
Return window closed on Sep 27, 2023

Buy it again

 SLSON Dog Bowls Pet Collapsible Bowl with Cover Lids,2 Pack Dog
Travel Bowls Portable Foldable Cat Water Dish Bowl for Pets
Walking Parking Camping (Fairy Pink and Sprout Green, Small)
Return window closed on Sep 28, 2023

Buy it again

  


  🔍 Search Amazon.com  🎤

| ORDER PLACED | TOTAL | SHIP TO | |
|---|---|---|---|
| Sep 11, 2023 | $10.49 | Linda J. Cole | View Order Details ❯ |



Coastal - Comfort Soft - Wrap Adjustable Dog Harness, Pink Bright, 3/8" x 11"-13"

Return window closed on Oct 13, 2023

**Buy it again**

| ORDER PLACED | TOTAL | SHIP TO | |
|---|---|---|---|
| Aug 26, 2023 | $0.00 | Linda J. Cole | View Order Details ❯ |



Duracell 395/399 1.5V Silver Oxide Button Battery, 3 Pack

Return window closed on Sep 30, 2023

**Buy it again**

Get product support ❯



Mighty Paw Smart Bell 2.0 Dog Doorbells for Potty Training | Wireless Electronic Dog Bell for Door Potty Training. Pet Communication Potty Bells for Dogs. Light Press Button Dog Bell (2 Activator)

Return window closed on Sep 27, 2023

**Buy it again**



Bostitch Office Twist-n-Sharp Pencil Sharpener, for Kids & Colored Pencils, Assorted Colors (PS1-ADJ)

Return window closed on Sep 27, 2023

**Buy it again**



Teamoy 4pcs Washable Female Dog Diapers, Reusable Doggie Diaper Wraps for Female Dogs, Super-Absorbent and Comfortable, XS

Return window closed on Sep 27, 2023

Buy it again

🏠  👤  🛒4  ☰



🔍 Search Amazon.com 🎤



ASURION 3 Year Home Improvement Protection Plan ($90 - $99.99)
Return window closed on Jan 31, 2024

Buy it again

---

ORDER PLACED          TOTAL          SHIP TO
Sep 24, 2023          $26.97         Linda J. Cole                    View Order Details  >



Jecikelon Pet Dog Clothes Dog Sweater Soft Thickening Warm Pup Dogs Shirt Winter Puppy Sweater for Dogs (Purple, XS)
Return window closed on Oct 27, 2023

Buy it again



Jecikelon Pet Dog Clothes Dog Sweater Soft Thickening Warm Pup Dogs Shirt Winter Puppy Sweater for Dogs (Khaki, XS)
Return window closed on Oct 27, 2023

Buy it again

---



Jecikelon Pet Dog Clothes Dog Sweater Soft Thickening Warm Pup Dogs Shirt Winter Puppy Sweater for Dogs (Pink, XS)
Return window closed on Oct 26, 2023

Buy it again

---

ORDER PLACED          TOTAL          SHIP TO
Sep 20, 2023          $45.77         Linda Cole                       View Order Details  >



RidgeCrest Herbals ClearLungs Extra Strength, Herbal Decongestant, 120 Vegan Capsules
Return window closed on Nov 17, 2023

  



**PETSMART**

PETSMART #6
9950 N NEWPORT H
SPOKANE A 9921
509- 366
Visit u etSma u

SALE [ 10 08 02
COMMUNITY CASHIER 28657

# TREATS# 1 03516

```
*************** BUY / GET ***************
0034024314130 BLUE M BISC          23.97
  REG PRICE (3  @  7.99  23.97 (BUY)
  (RETURN PRICE    5.00 EA)

0034024314130 BLUE M BISC           0.00
  REG PRICE            7.99
    BUY / GET          7.99- (GET)
  (RETURN PRICE    5.99 EA)
*****, *******(XX) ********************

0073725787410 TF D SHAMPO CNDTR     9.99
  REG PRICE            9.99
  (RETURN PRICE    9.99 EA)

0073725786750 TF D GROOMING        11.99
  REG PRICE           11.99
  (RETURN PRICE   11.99 EA)

0073725798452 DOG B AYAGE          17.99
  REG PRICE           17.99
  (RETURN PRICE   17.99 EA)

0073725  014 TF SS CARRIER         19.99
  REG PRICE           19.99
  (RETURN PRICE   19.99 EA)

0019648100758 CAT TOY               1.99
  REG PRICE            1.99
  (RETURN PRICE    1.99 EA)

0073725731932 GC D LEASH           16.99
  REG PRICE           16.99
  (RETURN PRICE   16.99 EA)

0073725779527 TF D DOUBLE DINER BOW 24.99
  REG PRICE            2
  (RETURN PRICE    9   A)

0009466402474 NIT D COLLAR ACCESSOR 7.99
  REG PRICE            7.99
  (RETURN PRICE    7.99 EA)

0073725777327 TF D   AC            28.99
  REG PRICE           28.99
  (RETURN PRICE   28.99 EA)

0073725794503 TF D DIAPER          33.88
  REG PRICE (4  @   8.47  33.88
  (RETURN PRICE    5.47 EA)
```

|  |  |
|---|---|
| SUBTOTAL | 198.76 |
| TAXABLE AMOUNT | 198.76 |
| NON-TAXABLE AMOUNT | 0.00 |

| TAX 9.000% | 17.89 |
|---|---|
| **TOTAL** | **216.65** |

DEBIT        (MSR)        216.65
XXXXXXXXXXXX447
001264
Verified By Pin
Contactless
TOTAL ITEMS SOLD 17
TOTAL ITEMS RETURNED 0
CHANGE DUE                   0.00

< **Transaction Details**



**PetSmart**

# −$216.65

## Transaction details

| | |
|---|---|
| Type | Card |
| Transaction date | Aug 04, 2023 |
| Posted date | Aug 04, 2023 |

SPOKANE, WA

📞 (888) 839-9638

| | |
|---|---|
| Description | PETSMART # 0381 SPOKANE WA 054751  08/04 |
| Also known as | Petsmart |
| Merchant type | Pet shops, pet foods and supply stores |
| Method | In person |
| Category | Shopping |

## Recent charges

| | |
|---|---|
| PETSMART # 0381<br>Sep 12, 2023 | −$43.58 |



**HARBOR FREIGHT TOOLS**
Quality Tools at Ridiculously Low Prices

BOISE ID #00054
10296 FAIRVIEW AVE.
BOISE, ID 83704
Telephone: (208) 376-8989

SALE

------------------------------------

Customer Name:            linda cole
Customer Number:      999065157828

------------------------------------

***20% OFF SINGLE ITEM***
56258 2500LB ZXR PSport WINCH        $71.99
  Original Price: $89.99
  Coupon Discount 20.0% Off: ($18.00)
  Coupon Number: 24571216
                  ******
302828 2YR REPLACEMENT PLAN          $20.99
  792363562584 2500LB ZXR PSport WINCH
  Salesperson No. 312367


Subtotal                             $92.98
Sales Tax 6.000%                      $4.32
Non Taxable 0.000%                     .00
**Total**                            **$97.30**

        Additional Savings $18.00
Visa                                 $97.30
  Card No. XXXXXXXXXXXX4497
  Expiration Date XX/XX
  Auth. No. 094418
  US DEBIT
Chip Read
PIN Bypassed
Mode: Issuer
AID: A0000000980840
TVR: 8080088000
IAD: 06010A03602000
TSI: 6800
ARC: 00


        Please Retain for Your Records

**Store: 00054    Reg: 03    Tran: 697998**
**Date: 7/13/2020 4:44:14 PM   Assoc: XXXXXX**
**Ticket: 03697998**

            Item(s) Sold: 1
            Item(s) Returned: 0

        Kimberly served you today.
        Thank you for shopping at
            BOISE ID #00054

**Proof of Purchase Required for Returns/**
**Exchanges Within 90 Days of Purchase.**

************************************

# Exhibit #2

## Michael Merritt

**From:**
**Sent:** Friday, December 15, 2023 3:08 PM
**To:** Michael Merritt
**Subject:** AKC Receipt - Online Dog Registration Application

\* NOTICE: EXTERNAL EMAIL \*

Dog's registration

> **From:** DogregOnline@akc.org
> **Date:** December 14, 2023 at 12:43:48 PM
> **Subject:** AKC Receipt - Online Dog Registration Application



Dear Linda J. Cole,

Thank you for registering your purebred dog with the American Kennel Club. Your Registration Cert
and any additional materials requested will be mailed separately to the address listed below.
We appreciate your involvement and hope you will stay connected in the years to come!

Download your copy of the New Puppy Guide at shop.akc.org/products/new-puppy-guide and use promo code newpuppyhb at ch

If you have any questions, or require additional information, please contact the AKC at http://www.;
or AKC Customer Service at 919-233-9767.

**AKC Receipt - Dog Registration Online Processing Processed On 14-DEC-2023**
Dog Registration Information

Transaction Number:
AKC Registration Name:   LADY ADORABLE

1

AKC Registration Number:

Breed:                Pomeranian

Variety:              N/A

Gender:             Female

Color:               Red Sable

Markings:          N/A

## Owner Information

Linda J. Cole

625 Broadway St

Baker City, OR 97814-3144

## Payment Information

| | |
|---|---|
| Registration Essentials: | $86.99 |
| Co-Ownership: | $10.00 |
| Pet Poison Helpline: | $13.50 |
| Total: | $110.49 |
| Credit Card Type: | VISA |
| Last 4 Digits on Credit Card: 8107 | |

2



**Garland Animal Clinic**
1022 West Garland
Spokane, WA 99205
(509) 326-3151

Page 1 / 1

Linda Cole
625 Broadway St.
Baker City, OR 97814

Client ID:
Invoice #:          515772
Date:          8/7/2023

| Patient ID: 25593A | Species: CANINE | Weight: 2.50 pounds | |
|---|---|---|---|
| Patient Name: Lady | Breed: POMERANIAN | Birthday: 06/07/2023 | Sex: Female |

| | Description | Staff Name | Quantity | Total |
|---|---|---|---|---|
| 8/7/2023 | Examination, Urgent Care New Client | Saundra R. Taylor DVM | 1.00 | $145.00 |
| | Anesthesia, Sedation | | 1.00 | $0.00 |
| | Anesthesia, IV/IM | | 1.00 | $123.00 |
| | Butorphanol Injection | | 0.02 | $0.00 |
| | Dexmedetomidine 0.5mg/ml Injection | | 0.02 | $0.00 |
| | Radiographs w/ Interpretation | | 1.00 | $305.00 |
| | Metacam 15ml (0.5mg/ml) | | 1.00 | $55.13 T |
| | | **Patient Subtotal:** | | **$628.13** |

Instructions

| | |
|---|---|
| **Invoice Total:** | **$628.13** |
| Sales Tax : | $4.96 |
| Total: | $633.09 |
| Balance Due: | $633.09 |
| Previous Balance: | ($633.09) |
| Balance Due: | $0.00 |
| Evalon: | ($633.09) |
| Less Payment: | ($633.09) |
| Change Given: | $633.09 |
| **Balance Due:** | **$0.00** |

Hooray!! Warmer weather is here!  Just make sure there's shade & LOTS of water available for your furry family members! FOR MORE
INFORMATION PLEASE VISIT WWW.VETERINARYPARTNER.COM
Find us on Facebook and at GarlandAnimalClinic.com



**Garland Animal Clinic**
1022 West Garland
Spokane, WA 99205
(509) 326-3151

Linda Cole
625 Broadway St.
Baker City, OR 97814

*Monday*
*11-6-23*    *10:00am*

Client ID:
Invoice #:
Date: _10/13/2023_

| Patient ID: 25593A | Species: CANINE | Weight: 2.50 pounds | |
|---|---|---|---|
| Patient Name: Lady | Breed: POMERANIAN | Birthday: 05/15/2023 | Sex: Female |

| | Description | Staff Name | Quantity | Total |
|---|---|---|---|---|
| 10/13/2023 | Annual Wellness Exam | Charlie Kittridge, DVM | 1.00 | $66.00 |
| | Rabies Booster 1 Year | | 1.00 | $30.00 |
| | Bordetella Oral | | 1.00 | $25.00 |
| | IDEXX Fecal Profile Prepaid | | 1.00 | $48.95 |
| | Complimentary Nail Trim | | 1.00 | $0.00 |
| | | | **Patient Subtotal:** | **$169.95** |

Instructions

Thank you for supporting WSU Rabies Vaccination Program! Each time your pet is vaccinated at our clinic for rabies, a donation is made to help eliminate rabies as a human health concern. Healthy Animals. Healthy People. Healthy Planet.

Your pet was vaccinated today. Some animals may experience lethargy, loss of appetite and localized discomfort from the vaccinations. If it persists longer than 24 hours, seems excessive, or you notice any facial swelling or vomiting contact our office.

Reminder

| 10/13/2024 | Bordetella Oral |
| | Rabies Booster 3 Year |
| | Annual Wellness Exam |

| | |
|---|---|
| Invoice Total: | $169.95 |
| Total: | $169.95 |
| Balance Due: | $169.95 |
| Previous Balance: | $0.00 |
| Balance Due: | $169.95 |
| VISA Card Number: | ($169.95) |
| Less Payment: | ($169.95) |
| **Balance Due:** | **$0.00** |

We are partnering with WSU to help in the elimination of **Rabies. A portion of all proceeds from the sales of Rabies vaccines will go toward continued research. Join us in the fight against Rabies by keeping your pet's vaccinations current.** For more information, visit our website at www.garlandanimalclinic.com

Garland Animal Clinic
1022 West Garland
Spokane , WA , 99205
(509) 328-3151

# Rabies Certificate

Client ID:
Client Name: Linda Cole
Address: 625 Broadway St.

Baker City, OR 97814

Phone:

Patient ID:
Patient Name: Lady
Species: CANINE
Breed: POMERANIAN
Sex: Female
Color: Red
Markings:
Birthday: 5/15/2023
Weight: 2.5 pounds

Tag Number:
Lot Number: 695474
Rabies
Vaccine 11/26/2024
Expiration:
Producer: Zoetis
K / MLV / R: Killed Virus

Vaccination Date: 10/13/2023
**Expiration Date:** **10/13/2024**

Vaccine Brand Name:

Microchip #

Staff Name: Charlie Kittridge, DVM
License Number:

Staff Signature:



# Animal Clinic of Baker, Inc.

2490 Tenth Street
Baker City, OR 97814
(541) 523-3611

*Linda Cole (#          )*
625 Broadway St
Baker City, OR  97814

**Sep 01, 2023**

**Invoice Number**
**171656**

---

*Lady (#    1)*

Species: Canine
Sex: Female
Age: 15 weeks and 4 days old
Breed: Pomeranian, Teacup
Coat Color: Red Sable
Rabies Tag Number:

Bordetella Vaccination:
DAPP : 10/01/2023
DHLP:
Leptospirosis Vaccination: 10/01/2023
RABIES:
Rattlesnake Toxoid Vaccine:

---

| Date | Code | Description | Qty | | Price |
|------|------|-------------|-----|---|-------|
| 09/01/2023 | DAPP1 | Distemper/Adenovirus/Parvo/Para- Initial | 1.00 | $ | 46.00 |
| | NEML | NEMEX LIQUID | 1.00 1ML | $ | 0.00 |
| | LEPTO1 | Leptospira 4 - Initial | 1.00 | $ | 45.00 |
| | HOME | HOMEAGAIN MICROCHIP | 1.00 | $ | 85.00 |
| | REGD2 | INTERNATIONAL REGISTRATION | 1.00 | $ | 28.00 |

|  |  |  |
|--|--|--|
| Total for Lady: | $ | 204.00 |
| Total Invoice: | $ | 204.00 |
| Visa(************4471) | $ | 204.00 |
| (Remaining Balance: $0.00) | | |
| Total Payments - Thank you: | $ | 204.00 |

Dr. Lisa Loennig

*Linda J. Cole*

# CANINE HEALTH RECORD

This record should be taken to all vet appointments.

## CANINE INFORMATION

Name _Tina_

Date of Birth _5/15/23_

Breed _Pomeranian_

☐ Male ☒ Female

☐ Spayed ☐ Neutered Date _____

Marking _Red Sable_

## OWNER INFORMATION

Owner _LINDA & TED COLE_

Phone # _661-800-1895_

Breeder _Olga Giudima_

Breeder Phone # _(509) 680-0180_

Date Acquired _8/3/23_

## OTHER INFORMATION

Veterinarian _____

Phone # _____

Emergency Contact _____

1  Michael R. Merritt
2  The Merritt Law Firm, PLLC
   1324 N. Liberty Lake Rd., #2151
3  Liberty Lake, WA 99019
   Phone: (509) 309-9105
4  Email: Michael@Merritt-Firm.com

5              SUPERIOR COURT OF THE STATE OF WASHINGTON
6                          FOR SPOKANE COUNTY

7

8  LINDA COLE and TED COLE,            Case No.: 23-2-04734-32

9            Plaintiffs,

10                                      **NOTICE OF FIRM CHANGE**
   vs.
11

12 ERIC YOUNG and SUSANANN YOUNG,

13           Defendants.

14 TO:    CLERK OF THE COURT, and

15 TO:    ALL PARTIES AND THEIR COUNSEL OF RECORD.

16        PLEASE TAKE NOTICE that Michael R. Merritt will be moving from the law firm of

17 Paine Hamblen, P.S. to The Merritt Law Firm, PLLC effective July 1, 2024.  Michael R. Merritt

18
   remains as counsel for Defendant in the above captioned matter.  You are hereby directed to
19
   serve all future pleadings and papers, except for original process, on Michael R. Merritt at the
20
   following address:
21

22           Michael R. Merritt, WSBA No. 60094
23           The Merritt Law Firm, PLLC
             1324 N. Liberty Lake Rd., # 2151
24           Liberty Lake, WA 99019
             Phone: (509) 309-9105
25           Email: Michael@Merritt-Firm.com

26

27

28

   NOTICE OF FIRM CHANGE - 1

Dated this 1st day of July, 2024.

/s/ Michael Merritt
Michael R. Merritt, WSBA No. 60094

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day July, 2024, I caused to be served a true copy of the foregoing Notice of Firm Change by the method indicated below, and addressed to each of the following:

Eric Young
Email: e-young-encrypt@pm.me
Susanann Young
Email: jaegersmum@gmail.com
8507 N. Sylvia St.
Spokane, WA 99208

☐ U.S. Mail, Postage Prepaid
☐ Hand Delivered
☐ Overnight Mail
X E-mail
☐ Facsimile

/s/ Michael Merritt
Michael R. Merritt

NOTICE OF FIRM CHANGE - 2